## Joseph Lemieux, Jr., et al. v. Tri-State Lotto Commission

[666 A.2d 1170]

No. 94-590

Present: **Gibson, Dooley, Morse and Johnson, JJ., and Bryan, Supr. J., Specially Assigned.**

Opinion August 11, 1995

*Colin R. Benjamin* of *Benjamin & Kazmarski, P.C.*, Newport, and *Richard H. Saudek* of *Cheney, Brock, Saudek & Mullett, P.C.*, Montpelier, for Plaintiffs-Appellants.

*Jeffrey L. Amestoy*, Attorney General, and *Mark J. Di Stefano*, Assistant Attorney General, Montpelier, for Defendant-Appellee.

*M. Jerome Diamond* and *Joshua R. Diamond* of *Diamond & Associates, P.C.*, Montpelier, for Amici Curiae Allen and Bach Investment Co.

**Dooley, J.** Plaintiffs Joseph Lemieux and Singer Freidlander Corp. appeal from the Washington Superior Court's grant of summary judgment to defendant Tri-State Lotto Commission, holding that defendant does not have to honor an assignment of lottery winnings between the plaintiffs. Plaintiffs argue on appeal that a rule promulgated by defendant barring assignment of lottery winnings is invalid because it (1) directly contravenes the intent of the Legislature, (2) violates the Vermont Constitution's separation of powers requirement, and (3) results in an improper retroactive application of law. We conclude that the Legislature did not intend to preclude the assignment of lottery prizes with court approval, and therefore, reverse and remand. This disposition renders consideration of plaintiffs' other grounds of appeal unnecessary.

On March 17, 1987, plaintiff Joseph Lemieux of Jay, Maine, won an aggregate prize in the Tri-State Megabucks lottery of $373,000. This lottery is run for the three northern New England states and is administered in Vermont. Per its usual payment plan, defendant disbursed the prize to Lemieux through a twenty-year annuity to be paid in equal, annual installments of $18,650. According to his affidavit, Lemieux originally dedicated the proceeds to payments on a new house, but his wife lost her job, and Lemieux ended up deep in debt. On October 26, 1993, after negotiations through his lawyer, Lemieux entered into a written agreement with plaintiff Singer Freidlander Corp. assigning to the corporation his entire right, title, and interest in the lottery-prize installments for the years 1996–2006 for the sum of $80,000. Plaintiffs sought a declaratory judgment from the Washington Superior Court authorizing the assignment agreement between them despite defendant's regulation barring such agreements. The trial court granted defendant's motion for summary judgment, and this appeal followed.

The Tri-State Lotto Compact establishes a lottery game to be maintained and operated throughout Maine, New Hampshire, and Vermont. See generally Me. Rev. Stat. Ann. tit. 8, §§ 401–422 (West 1994); N.H. Rev. Stat. Ann. § 287-F (1987); 31 V.S.A. §§ 671–678. The member states enacted the legislation to raise additional reve-

nue, see, e.g., 31 V.S.A. § 673, and to compete more effectively with the large grand prizes offered in the Massachusetts and New York lottery games. The game is administered by a commission comprised of one member from each of the party states, 31 V.S.A. § 674(C), and this commission has the power to promulgate the rules and regulations that govern the game, including the manner of selecting the winning tickets and paying the prizes. *Id.* § 674(E)(1)(d).

The Tri-State Lotto Compact also specifically describes the manner in which winners of the game are to be certified and paid. *Id.* § 674(L)(1). The legislation states that

> Payment of prizes shall be made . . . to holders of the tickets . . . except that payment of any prize drawn may be paid to the estate of a deceased prize winner, and except that any person pursuant to an appropriate judicial order may be paid the prize to which the winner is entitled.

*Id.* By rule, the commission has defined "appropriate judicial order" as a court order "in a proceeding principally based upon an issue other than the assignment or conveyance of a lottery prize in which the court makes a disposition of the lottery prize as a remedy." Tri-State Lottery Commission Rule 11(d).* The issue is whether a court can order defendant to pay an assignee of a ticketholder, other than in the circumstances authorized by the rule. Resolution of this issue necessitates that we decide whether Rule 11(d) is valid.

This Court has been traditionally reluctant to substitute our judgment for the experience and expertise of an agency. See *In re Agency of Admin.*, 141 Vt. 68, 74, 444 A.2d 1349, 1351 (1982). Absent a compelling indication that an agency has misinterpreted the statute

---

* Regulation 11(d) provides that:

> No right of any person is assignable, except that payment of any prize may be paid to the estate of a deceased winner, and except that any person pursuant to an appropriate judicial order may be paid the prize to which the winner is entitled. An appropriate judicial order is defined to be an order of a court of competent jurisdiction in a proceeding principally based upon an issue other than the assignment or conveyance of a lottery prize in which the court makes a disposition of the lottery prize as a remedy. Examples of appropriate court orders are, but are not limited to the following:
>
> 1) Domestic relations or divorce orders;
> 2) Orders in bankruptcy proceedings;
> 3) Child support or other support orders;
> 4) Orders in cases alleging personal injury or property damage;
> 5) Orders in garnishment, attachment, or trustee process proceedings; and
> 6) Orders seeking satisfaction of other judicial orders.

it has been charged to execute, we will defer to the agency's judgment. *Id.* at 74–75, 444 A.2d at 1351–52; *Vermont Ass'n of Realtors v. State*, 156 Vt. 525, 530, 593 A.2d 462, 465 (1991). Accordingly, we have consistently held that agency actions, including the promulgation of rules, enjoy a presumption of validity. *Id.* at 530, 593 A.2d at 465.

Despite this deferential standard of review, this Court has never been hesitant to intervene if an administrative agency uses its rulemaking power to exceed its legislative grant of authority. *Agency of Admin.*, 141 Vt. at 75, 444 A.2d at 1352. The wide discretion afforded agency actions will not stand if this discretion is exercised in an unrestrained manner. *State v. Auclair*, 110 Vt. 147, 163, 4 A.2d 107, 114 (1939); see also *Trybulski v. Bellows Falls Hydro-Electric Corp.*, 112 Vt. 1, 7, 20 A.2d 117, 120 (1941) (agency has only such powers as are expressly conferred by Legislature). Therefore, an agency rule or regulation that compromises the intent of the authorizing statute is void. *In re Club 107*, 152 Vt. 320, 322, 566 A.2d 966, 967 (1989); *Agency of Admin.*, 141 Vt. at 74–75, 444 A.2d at 1351–52.

In construing a statute, our overall objective is to give effect to the intent of the Legislature. See *Massachusetts Mun. Wholesale Elec. Co. v. State*, 161 Vt. 346, 355, 639 A.2d 995, 1001 (1994). We look to the whole of the statute and every part of it, its subject matter, the effect and consequences, and the reason and spirit of the law. See *Winey v. William E. Dailey, Inc.*, 161 Vt. 129, 136, 636 A.2d 744, 749 (1993). If the statute is unambiguous, we look first to the plain, ordinary meaning of the statutory language. See *Massachusetts Mun. Wholesale Elec. Co.*, 161 Vt. at 355, 639 A.2d at 1001.

At the center of this dispute is the statutory language that allows payment to other than a ticketholder pursuant to an "appropriate judicial order." Defendant interprets the statutory language narrowly, so as not to undercut a policy of nonassignment of lottery proceeds which it finds in the statutory scheme. It argues, moreover, that its rulemaking power is broad enough to allow it to define the term and that we must uphold its definition. Plaintiffs take the other side of these arguments, stressing that the language does not limit the court's authority to act in a proceeding where the purpose is to validate an assignment.

We concede that the meaning of the statutory language is far from plain. Although the wording appears to require that the judicial order be "appropriate," both sides agree that it is the circumstances giving rise to the order that must be "appropriate." See *McCabe v. Director*

*of N.J. Lottery Comm'n*, 363 A.2d 387, 388 (N.J. Super. Ct. Ch. Div. 1976) (identical language in New Jersey statute means that judiciary can authorize assignment in "suitable or appropriate circumstances"). We conclude, however, that the wording supports plaintiffs' argument.

The statutory language "appropriate judicial order" is present in virtually every lottery statute in the United States. As defendant points out, numerous appellate courts have interpreted this language, usually in disputes similar to this one. In each instance, the court has adopted a narrow interpretation of the language, much like that adopted by defendant here, or has enforced rules of the lottery agency embodying a narrow construction. See *In re Dalton*, 146 B.R. 460, 463 (Bankr. D. Ariz. 1992); *R & P Capital Resources v. California State Lottery*, 37 Cal. Rptr. 2d 436, 440 (Ct. App. 1995); *Walker v. Rogers*, 650 N.E.2d 272, 276 (Ill. App. Ct. 1995); *In re La. Lottery Corp. Grand Prize Drawing*, 643 So. 2d 843, 846 (La. Ct. App. 1994); *McCabe v. Director of N.J. Lottery Comm'n*, 363 A.2d at 390; *Lotto Jackpot Won by Marianov*, 625 A.2d 637, 640 (Pa. 1993); *Converse v. Lottery Comm'n*, 783 P.2d 1116, 1118 (Wash. Ct. App. 1989); see also *Meyers v. Ohio State Lottery Comm'n*, 517 N.E.2d 1029, 1034 (Ohio Ct. App. 1986) (language does not permit either voluntary assignment or attachment by creditors pursuant to judicial order).

In each of these cases, however, the statutory scheme contains an express statutory prohibition on voluntary assignment. This is a "clear and unambiguous statement of legislative intent." *In re La. Lottery Corp. Grand Prize Drawing*, 643 So. 2d at 845. Thus, if the "appropriate judicial order" language were interpreted to allow voluntary assignment in such a system, "the exception would swallow the rule of no assignment." *R & P Capital Resources*, 37 Cal. Rptr. 2d at 439. The language can be harmonized with the legislative intent by not allowing a judicial order to validate a voluntary assignment. See *Walker*, 650 N.E.2d at 276.

The Tri-State Lotto Compact contains no express prohibition on voluntary assignment. Thus, there is no inherent tension in the statutory scheme that requires us to narrow the authorization for payment to persons other than the ticketholder. Our statute provides that "*any person* pursuant to an appropriate judicial order may be paid the prize to which the winner is entitled." 31 V.S.A. § 674(L)(1) (emphasis added). The words convey a broad power, not a limited one, as defendant urges. We will apply it according to the wording the Legislature chose. See *Robes v. Town of Hartford*, 161 Vt. 187, 193, 636 A.2d 342, 347 (1993) (we presume that Legislature chooses its words "advisedly").

Defendant argues, however, that 31 V.S.A. § 674(L)(1) requires it to pay the ticketholder, and that this requirement should be interpreted as a prohibition on assignment. We do not view the payment provision as a prohibition or policy against assignment, but instead as a direction on how payment is to be made as long as there is no judicial order to the contrary and the prizewinner is not deceased. As the decisions reflect, the statutes are so similar among states that a model act exists de facto. Out of thirty-six jurisdictions with lottery statutes, twenty-eight contain prohibitions on voluntary assignment. See *Walker*, 650 N.E.2d at 275. Given the wide use of lottery legislation that specifically bars assignments, it is clear that the Maine, New Hampshire, and Vermont legislatures purposefully eliminated this language so as to allow for assignments. See 2B N. Singer, Sutherland Statutory Construction § 52.02, at 200 (5th ed. 1992) (changes made in statute by legislature of adopting state must have been for purpose of avoiding construction developed elsewhere). As reinforcement of this point, we note that Maine's state lottery statute does not permit the assignment of prizes, Me. Rev. Stat. Ann. tit. 8 § 378 (West 1994), and that Maine was the first of the states to pass the Tri-State Lotto Compact. We infer that the absence of the language prohibiting voluntary assignment from the compact was intentional.

Although we reach the opposite conclusion from other decisions, based on the characteristics of our statutory scheme, one part of the rationale for some of those decisions requires discussion. Both the California and Pennsylvania courts found reinforcement for their position in the lack of standards for judicial action in approving an assignment. See *R & P Capital Resources*, 37 Cal. Rptr. 2d at 439; *Lotto Jackpot Won by Marianov*, 625 A.2d at 639–40. We agree that a standardless authorization for judicial action in ex parte proceedings would be an unreasonable result and would, in fact, raise separation of power concerns. We can avoid this only by finding some standards in the cryptic term "appropriate."

In an earlier decision, the Washington Superior Court interpreted the term as requiring the court to consider traditional equitable issues in determining whether to approve an assignment. Thus, the court reviewed the assignment contract to determine whether it "is the result of fraud, incapacity, duress, undue influence, or illegality [and] the interests of plaintiff have been protected." *Seybolt v. Tri-State Lotto Comm'n*, No. S-782-92 WnC, slip op. at 2 (Washington Super. Ct. Feb. 2, 1993). The court approved the assignment because

the ticketholder acted on advice of a financial advisor and was so elderly that it was unlikely she would receive all the installments during her life. *Id.*, slip op. at 1. It found no evidence of fraud or overreaching.

Without specifying in advance all of the considerations that will go into court review of assignment contracts, we agree that such review must be limited according to the necessarily limited role of the judiciary. As in this case, the presence of the Lotto Commission as defendant creates a sufficient adversary proceeding for the court to act. By interpreting the statute to avoid an unreasonable or unjust result, we find adequate guidance in its language.

Finally, we must address defendant's argument that it is empowered to define "appropriate" by regulation and has done so here. Defendant points to two sections of the compact:

> (E)(1) The commission shall have the power and it shall be its duty to operate and administer Tri-State Lotto and to promulgate rules and regulations governing the establishment and operation of the lotto, including but not limited to the following topics:
>
> . . . .
>
> (d) the manner of selecting the winning tickets and paying the prizes;

31 V.S.A. § 674(E)(1)(d), and

> (L)(3) Prizes may be paid in such manner as the commission may direct in its rules and regulations as long as the rules and regulations are not inconsistent with this compact.

31 V.S.A. § 674(L)(3).

As indicated above, we normally do not interfere with an administrative agency's construction of the statute it administers, and we presume that administrative rules are valid. *Vermont Ass'n of Realtors*, 156 Vt. at 530, 593 A.2d at 465. We cannot enforce administrative rules if they are inconsistent with the authorizing statute. We have already found an inconsistency between the statute and the commission's rule because the statute imposes no limits on when a transfer of lottery winnings can be found appropriate and the rule does impose limits.

We think, however, there is a more fundamental inconsistency that defeats the rule. Under defendant's interpretation of the statute, as embodied in Rule 11(d), the court decides to approve a transfer of the

lottery prize interest, but the Lotto Commission decides when such a transfer is appropriate. We see no authorization for this division of power in the statutory language. Whether we view the words in isolation or in context, their import is that the court, not the commission, decides when an order allowing a transfer would be appropriate.

Moreover, we view the result brought about by the rule as unreasonable. See *Chamberlin v. Vermont Dep't of Taxes*, 160 Vt. 578, 580, 632 A.2d 1103, 1104 (1993) (presume no unjust or unreasonable result was intended). If the commission can restrict the grounds for court action as in Rule 11(d), it can, in effect, take over the approval decision, making the court decision perfunctory. If the Legislature had intended to give the commission such power, it would have left the approval decision to the commission in the first instance.

Neither of the rulemaking authorizations contained in the statute validate a rule that is inconsistent with the compact language; in fact, § 674(L)(3) explicitly validates rules only if "not inconsistent" with the compact. Despite the presumption of validity of administrative rules and the discretion we accord the commission, we conclude that Rule 11(d) is inconsistent with the statute and decline to enforce it.

The trial court granted summary judgment for defendant without reaching the merits of whether the assignment should be approved. Although plaintiffs request that we enter summary judgment for them, or direct the trial court to do so, we believe this action would be premature. The trial court must determine whether the assignment should be approved in this case.

*Reversed and remanded for proceedings not inconsistent with this opinion.*

**In re F.P., H.P., S.P., J.P., D.P. and L.P.**