# Central Vermont Hospital, Inc., et al. v. Town of Berlin

[672 A.2d 474]

No. 94-591

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed December 15, 1995

*Richard Linton Brock, Sandra E. Levine* and *James S. Brock* of *Cheney, Brock, Saudek & Mullett, P.C.*, Montpelier, for Plaintiffs-Appellants.

*Robert Halpert* of *Paterson & Walke, P.C.*, Montpelier, for Defendant-Appellee.

**Dooley, J.** Plaintiffs Central Vermont Hospital, Inc. (CVH) and Woodridge, Inc. appeal the Washington Superior Court's finding that the nursing home facility owned by Woodridge on land leased from CVH is subject to property taxation by defendant Town of Berlin. Plaintiffs claim that a nonprofit nursing home, which benefits hospital patients and is located on land leased to it by a hospital, is exempted from property taxation by 32 V.S.A. § 3802(4), and is not subject to taxation, under 32 V.S.A. § 3832(7), as property "used primarily for health . . . purposes." We affirm.

CVH is a nonprofit hospital in Berlin, Vermont, providing acute, short-term health care to members of the public without regard to their ability to pay. In 1993, Woodridge began operation as a Level I & II skilled nursing care facility in Berlin on property owned by CVH and leased to Woodridge for one dollar per year. Admission to Woodridge is by order of physician. Woodridge accepts all patients regardless of their ability to pay as long as a bed is available, although a preference is given to CVH patients. The facility has run at a 99% occupancy rate, with 80% to 83% of the patients receiving Medicaid.

The management of Woodridge and CVH is essentially the same, although the corporations have separate boards of trustees. Some of the trustees serve on both boards. The holding company of Woodridge and CVH is Central Vermont Medical Center, Inc. (CVMC). CVMC is the sole member of both Woodridge and CVH. Its mission is carried out by assigning short-term, acute-care responsibilities to CVH and long-term care responsibilities to Woodridge.

In July of 1993, defendant sent a property tax bill to CVH for the twelve acres of land leased by CVH to Woodridge, and a bill to Woodridge for its nursing facility. The taxability of only the nursing home is at issue.

Under 32 V.S.A. § 3802(4), real and personal property used for charitable purposes is exempt from local property taxes. There is no dispute that the Woodridge facility is a charitable use covered by § 3802(4), unless an exception applies. Defendant argues that Woodridge is "used primarily for health . . . purposes" and is therefore excepted from property tax exemption by § 3832(7). Plain-

tiffs respond that because of other exceptions within § 3832, the exception relied upon by defendant cannot extend to plaintiffs. Specifically, they argue that the Woodridge facility is directly connected to CVH and is exempt from property taxation as a "home" or a "hospital,"[1] and is not used for health purposes because "health" means being free from disease.

The analytical framework for this dispute is set forth in *Medical Center Hospital of Vermont, Inc. v. City of Burlington*, 152 Vt. 611, 623, 566 A.2d 1352, 1358 (1989), in which we upheld the property tax exemption status of the Medical Center Hospital and related properties. As here, the City of Burlington argued that the hospital's property was used primarily for health purposes and therefore fit within the exception of § 3832(7). We noted that exceptions in § 3832(2), (6) specifically applied to hospitals under certain narrow circumstances, showing a legislative intent that the hospital would remain exempt if not within these exceptions. Thus, we held that because the term "hospital" is specifically used in § 3832(2) and (6), subsection (7)'s reference to property used for "health . . . purposes" could not be considered as encompassing hospital property since such an interpretation "would lead to the irrational result of rendering portions of subsections (2) and (6) meaningless." *Id.* at 622, 566 A.2d at 1358.

The two exceptions relied upon in *Medical Center Hospital* are central to the issues before us because plaintiffs rely on language within them. Subsection (2) permits a town to tax "[r]eal estate owned or kept by a religious society other than a church edifice, a parsonage, the outbuildings of the church edifice or parsonage, a building used as a convent, school, orphanage, *home* or *hospital* . . . ." 32 V.S.A. § 3832(2) (emphasis added). Subsection (6) permits a town to tax "property owned or kept by an orphanage, *home* or *hospital* including diagnostic and treatment center not used for the purpose of such institution but leased to others for income or profit . . . ." *Id.* § 3832(6) (emphasis added). In *Medical Center Hospital*, there was

---

[1]Defendant claims plaintiffs did not argue below that Woodridge is a "home," and therefore the issue is not properly preserved. The trial court, however, wrote that the "only issue in this case is whether the exceptions to the exemption found in 32 V.S.A. Subsection 3832, apply." It reviewed all parts of § 3832. Furthermore, the court considered and denied "all other requests" in its entry regarding plaintiffs' motion to amend judgment. The motion specifically, albeit cursorily, asserted plaintiffs' argument that Woodridge is a "home." We conclude that the issue of Woodridge's status as a "home" was, therefore, properly preserved.

no question that the entity in dispute was a hospital. Here, the nature of Woodridge is central to the dispute.

We understand plaintiffs to make three arguments from the statutory language: (1) Woodridge is a "home" for purposes of § 3832(2), (6); (2) Woodridge is directly connected to CVH so that its facilities are part of CVH for purposes of § 3832(2), (6); and (3) Woodridge is a treatment center and therefore a "home or hospital" as set out in § 3832(6). We take these in turn.

■ First, we do not read the term "home" in § 3832(2), (6) as including nursing homes. In reaching this conclusion, we emphasize the rationale of *Medical Center Hospital* that the "plain and ordinary language" of § 3832(7) does not create a general exception for hospitals, because the specific treatment of hospitals in § 3832(2), (6) showed a legislative intent to exempt hospitals from property taxation in most circumstances.

Plaintiffs argue that we should use the same analysis herein because a skilled nursing facility is a home for purposes of § 3832(2), (6). This argument, however, sets up an unnecessary conflict between the subsections of § 3832. We have recognized "a fundamental rule of statutory construction that statutes dealing with the same subject matter should be construed with reference to each other as parts of one system." *Emmons v. Emmons*, 141 Vt. 508, 512, 450 A.2d 1113, 1115 (1982). Where two statutes cover the same subject and one is more specific than the other, we harmonize them by giving effect to the more specific provision according to its terms. See *State v. Buelow*, 155 Vt. 537, 541, 587 A.2d 948, 951 (1990) (holding that more specific statutory sections on jurisdiction control). Further, we normally enforce a newer statute over an older one in conflict with the newer statute. *Lomberg v. Crowley*, 138 Vt. 420, 423, 415 A.2d 1324, 1326 (1980). Subsection (7) of § 3832 was added in 1955, see 1955, No. 178, § 1 (property tax exemption does not include "land, buildings, and tangible personal property . . . used primarily for health or recreational purposes"), whereas subsections (2) and (6) have existed since 1910 and 1933 respectively, see 1910, No. 32, § 1 (exemption does not include "lands or buildings owned or kept by a religious society"); 1933, No. 10, § 1 (exemption does not include "any lands or buildings owned or kept by any orphanage, home or hospital and not used directly for the purpose of such institution, but leased to others for income or profit").

■■ Here, the more specific and later provision, § 3832(7), which clearly makes property used "primarily for health . . . purpos-

es" taxable, controls over the more general and vague term "home," which can describe virtually any facility in which persons stay overnight for any reason. The way to harmonize the provisions is to conclude that "home" does not include property used primarily for health purposes. In this way, finding that § 3832(7) controls does not lead to "the irrational result of rendering portions of subsections (2) and (6) meaningless," the essential component of the *Medical Center Hospital* analysis. See 152 Vt. at 622, 566 A.2d at 1358 (holding that subsection (7) does not remove hospital's tax-exempt status).

■ Independent of the conflict question, we also find it likely that this construction of "home" reflects the Legislature's intent. Nursing homes are defined by statute as providing primarily health-related medical and nursing services.[2] The word "home" first appeared in § 3832 in 1904, see 1904, No. 25, § 1 (amending 1894 V.S. § 364) ("[T]he lands or buildings exclusively used for the support of . . . homes . . . which receive and care for, without pay, indigent, old or infirm patients or inmates, shall be exempt from taxation."), when nursing homes were not common in this country. Although the forerunners of modern nursing homes were founded in the late nineteenth and early twentieth centuries, the nursing home, as we now know it, is actually an indirect creation of the Social Security Act of 1935. B. Vladec, *Unloving Care*, 37-38 (Basic Books 1980). We doubt that when it first used the term "home," the Legislature intended a medical care provider.

Second, Woodridge cannot be considered a "hospital." Relying on *Medical Center Hospital*, plaintiffs argue Woodridge is "directly connected" and essential to CVH and therefore exempt as part of a hospital.

We think this argument faces an initial insurmountable obstacle. The property found exempt in *Medical Center Hospital* was owned by the hospital. See 152 Vt. at 624-25, 566 A.2d at 1359 (finding that hospital provides space for parking lot, anesthesologists' and radiologists' offices, data processing, and laboratories). The property involved here is owned by Woodridge, Inc., a separate corporation.

---

[2] "'Nursing home' means an institution or distinct part of an institution which is primarily engaged in providing to its residents any of the following: (A) Skilled nursing care and related services for residents who require medical or nursing care. (B) Rehabilitation services for the rehabilitation of injured, disabled, or sick persons. (C) On a 24-hour basis, health related care and services to individuals who because of their mental or physical condition require care and services which can be made available to them only through institutional care." 33 V.S.A. § 7102(7).

The logic of plaintiffs' argument requires them to show that CVH "owned or kept" the Woodridge property because of the use of that language in subections (2) and (6). Whatever the meaning of "kept" in this context, we do not see factual support for its application here.

We recognize that plaintiffs are affiliated through a common holding company. There is, however, insufficient factual development for us to conclude that irrespective of the formal corporate arrangements, CVH really owns or keeps the Woodridge facility.

Apart from the ownership, we do not believe that plaintiffs' circumstances are comparable to those in *Medical Center Hospital.* In that case, we found that a parking garage, anesthesiologists' and radiologists' offices, staff sleeping area, and data processing and lab facilities were not taxable because they were sufficiently "directly connected" to the operation of a hospital and used "'in a way that is essential to the operation of the [hospital] and in furtherance of its charitable purpose.'" *Id.* at 624, 566 A.2d at 1359 (quoting *Shelburne Museum, Inc. v. Town of Shelburne,* 129 Vt. 341, 344, 278 A.2d 719, 721 (1971)). For example, the hospital's parking needs would not have been met absent the parking lot, and thus the parking lot is tax-exempt as directly connected and essential to the hospital. *Id.* at 624-25, 566 A.2d at 1359.

Unlike the parking lot, however, the relationship Woodridge has with CVH is cooperative, rather than integral. Woodridge's primary purpose is to provide the long-term care aspects of CVMC's mission, a medical service that acute-care hospitals do not provide. Its bylaws and articles of association were implemented to facilitate patient care, rather than to integrate Woodridge's subacute-care program into CVH's functions. Patients who are transferred from CVH to Woodridge are moved because CVH has completed all hospital-acute care services, and the patients desire to go to a nursing home for subacute health care. Although it provides nursing care for CVH patients and is convenient to the hospital, Woodridge accepts non-CVH patients and is not essential to the operation of CVH. If Woodridge did not exist, patients in need of long-term care would either stay in CVH or be transferred to another nursing facility. Without the hospital, the nursing home would still provide a much-needed service separate and distinct from services provided by an acute-care hospital, unlike the parking lot, which was only necessary because of the hospital's demand for parking. As a result, we do not consider Woodridge directly connected to CVH under § 3832.

Third, we do not agree that because Woodridge is a treatment center, it is necessarily a "home or hospital." In construing a statute, our objective is to give effect to the intention of the Legislature. *Lemieux v. Tri-State Lotto Comm'n*, 164 Vt. 110, 113, 666 A.2d 1170, 1173 (1995). If the statute is unambiguous, we look first to the plain, ordinary meaning of the language. *Id.* "We look to the whole of the statute and every part of it, its subject matter, the effect and consequences, and the reason and spirit of the law." *Id.* A tax exemption will be "strictly construed against the party claiming it." *Medical Ctr. Hosp.*, 152 Vt. at 615, 566 A.2d at 1354.

■ Plaintiffs argue that Woodridge is a treatment center and therefore should not be included in § 3832(7)'s exception from the property tax exemption because the term "treatment center" is used in subsection (6), and reading subsection (7) as including treatment centers would lead to the irrational result of rendering portions of subsection (6) meaningless. This argument misconstrues the very limited way in which the term "treatment center" is used in subsection (6). The subsection covers a specific circumstance where property owned or kept by an orphanage, home, or hospital is leased to a diagnostic and treatment center. It does not suggest that by this leasing arrangement the treatment center somehow becomes transformed into an orphanage, home, or hospital. Because we find Woodridge is not owned by a home or a hospital, and clearly not an orphange, it does not come within subsections (2) or (6). Thus, there is no reason to read Woodridge out of subsection (7). By virtue of subsection (7), it is not tax exempt.

*Affirmed.*