STATE OF VERMONT

ENVIRONMENTAL COURT

|  | } |  |
|---|---|---|
| In re: Maggio Act 250 Land Use Permit Amendment | } | Docket No. 166-7-06 Vtec |
| (Appeal of Maggio) | } | |
|  | } | |

Decision and Order on Motion for Partial Summary Judgment

Appellant-Applicants Robert and Christine Maggio appealed from a decision of the District 4 Environmental Commission denying their application for an Act 250 permit amendment to construct a six-foot opaque wooden palisade-type fence at the rear boundary of their property in the Woodlands Development at Lang Farm, a residential subdivision in the Town of Essex.

Appellant-Applicants are represented by John P. Cain, Esq. The following individuals reside in the neighboring Countryside residential subdivision,[1] had party status at the District Commission with respect to Criterion 8 (aesthetics), and have entered their appearances in this appeal: William Etter, Sheree Etter, Heidi A. Hawes, and Thomas M. Cilley. The following individuals reside in the neighboring Countryside residential subdivision, but did not have party status at the District Commission: Edward M. DeMulder, Kathryn A. Finnie, Patricia Smallwood, and George Ebert; they have also entered their appearances in this appeal. The following individuals reside in the Woodlands Development at Lang Farm, had party status at the District Commission with respect to Criterion 8 (aesthetics), and have entered their appearances in this appeal: Edward Besade, Carol Besade, Robert Irwin, and Florianne Irwin. The following individuals reside in the Woodlands Development at Lang Farm, but did not have party

---

[1] The determinations of residence location are derived from street addresses provided on the entries of appearance filed in this Court.

1

status at the District Commission: Max Levy, Patricia Diminick, Sylke Buder-Hoffmann and Burt Willey; they have also entered their appearances in this appeal.

Appellant-Applicants have moved for summary judgment regarding the "meaning" of the term "to provide screening" in Finding 20 of Act 250 Permit #4C0608–19, which implicates Questions 3 and 4 of the Statement of Questions. The following facts are undisputed unless otherwise noted.

Act 250 Permit #4C0608–19[2] was issued in 1994, governing the development of the final phase of the Woodlands Development at Lang Farm. It authorized the construction of seventy-one residential lots on a 53.3-acre parcel of land, with associated roadways and utilities. The outside westerly boundary of this final phase of the Woodlands Development at Lang Farm adjoins the easterly boundary of the Countryside residential subdivision. The Countryside residential subdivision was in existence and occupied prior to 1994, when Act 250 Permit #4C0608–19 was considered and issued by the District Commission for the construction of the final phase of the Woodlands Development at Lang Farm.

Finding 20 of Act 250 Permit #4C0608–19, applicable to the final phase of the Woodlands Development at Lang Farm, provided that:

> The District Commission will require a 25-foot undisturbed vegetated buffer along the rear portion of lots 1 - 42 [including Appellant-Applicants' lot] in order to provide screening between the proposed lots and the existing adjacent [Countryside] residential subdivision.

As reflected in the affidavit[3] filed in this matter by Ms. Hawes, she purchased her

---

[2] No party has provided a copy of this Act 250 permit in connection with the present motions. Any quotations from it are taken from the later District Commission decisions on the permit amendment at issue in the present appeal, which have been supplied.

[3] Both the Hawes affidavit and an affidavit filed by Ms. Etter contain a mixture of facts and legal argument, as both affiants are unrepresented parties in this appeal. The Court has treated the argument portions of these affidavits as memoranda of law submitted

2

home at the outer perimeter of the Countryside Subdivision in 1993 in reliance on representations regarding earlier permits for the Woodlands Development at Lang Farm that the final phase of the Woodlands Development at Lang Farm to be adjacent to her property would have a fifty-foot-wide wooded buffer area that would remain an undisturbed natural area.

Ms. Hawes attended the 1994 hearings of the District 4 Environmental Commission that resulted in Act 250 permit amendment #4C0608–19, including in particular the term in Finding 20 requiring the buffer, which was reduced during the course of those Act 250 proceedings from its original width of fifty feet down to twenty-five feet, but was not eliminated.

In 1998, Appellant-Applicants purchased the house and residential property at 33 Sydney Drive, which is Lot 17 in the final phase of the Woodlands Development at Lang Farm. The rear lot line of Appellant-Applicants' property is the outside westerly[4] boundary of the Woodlands Development at Lang Farm, where it adjoins the easterly boundary of the Countryside residential subdivision. The rear (easterly) boundary of the Etters' lot line adjoins the rear (westerly) boundary of Appellant-Applicants' lot. The Cilley and Hawes lots are located to either side of the Etter lot; the rear (easterly) boundaries of the Cilley and Hawes lots adjoin, respectively, the rear (westerly) boundaries of the Irwin and Besade lots.

In March of 2006, Appellant-Applicants installed a swimming pool in their back

by the affiants. Appellant-Applicants are correct that no party may now collaterally attack the unappealed original 1994 Act 250 Permit #4C0608–19. However, to the extent that at least the Hawes affidavit pertains instead to the facts related to the reliance of residents living at the boundary of the Countryside Subdivision on the terms of Act 250 Permit #4C0608–19, it is material to the Court's analysis under In re Nehemiah Assocs., Inc., 168 Vt. 288, 294 (1998).

[4] The directions in this decision are taken from publicly-available street maps of Chittenden County.

yard. In early April they asked the District Coordinator for an interpretation of Finding 20 and requested permission to construct[5] a six-foot-high opaque wooden stockade-type fence along the perimeter of their property, including at the boundary (westerly) edge of the 25-foot-wide undisturbed vegetated buffer provided by Finding 20. On April 10, 2006, the District Coordinator issued Administrative Amendment #4C0608-19B allowing Appellant-Applicants to install a "six-foot wood stockade fence" within what the District Coordinator characterized as "the 25-foot 'undisturbed zone' of Lot #17."

Mr. and Mrs. Etter, Ms. Hawes, and Mr. Cilley filed a motion with the District Commission to alter the District Coordinator's decision. On May 24, 2006, the District Commission conducted a site visit and held a hearing on the motion to alter. On June 6, 2006, the District Commission issued a Memorandum of Decision that established preliminary party status, determined that an Act 250 permit amendment is required for the proposed fence, determined that Finding 20 was issued under the aesthetics component of Criterion 8 (10 V.S.A. §6086(a)(8)), and determined that an analysis under Act 250 Rule 34(E) (a so-called <u>Stowe Club Highlands</u> analysis) was not warranted. The June 6, 2006 District Commission decision determined that, in issuing Act 250 Permit #4C0608–19, the 1994 District Commission had not made a determination that the aesthetic impact of the final phase of the Woodlands Development at Lang Farm would be "undue" and therefore in need of mitigation by the 25-foot-wide buffer. Rather, the June 6, 2006 District Commission decision determined that Finding 20 "was inserted into the written record so that the existing neighborhood's aesthetic quality would not degrade substantially with development of the" final phase of the Woodlands Development at Lang Farm. The

[5] Appellant-Applicants' application has not been submitted to the Court; it is characterized as their having "filed an application" on April 5, 2006 in the June 6, 2006 Memorandum of Decision and Order of the District Commission on the motion to alter and in the June 16, 2006 Final Memorandum of Decision and Order of the District Commission issuing the amended permit.

District Commission stated that "the aesthetics of the area should be taken seriously" and concluded that fencing on the boundary line would not be inconsistent with Finding 20, "provided, in this instance, that the fencing [does] not eliminate the view of the buffer for the adjoining rear neighbors." No party appealed the District Commission's June 6, 2006 decision.

The "Order" section of the June 6, 2006 decision required Applicants to "submit alternatives for a fence that will provide the desired necessary security as well as maintaining the adjacent landowners' aesthetic view of the Buffer." Instead of submitting alternatives, however, and instead of either moving the District Commission for reconsideration under Act 250 Rule 31(B) with an altered proposal, or appealing to this Court, Appellant-Applicants proceeded to install the proposed six-foot-high opaque wooden stockade fence, at some time between Friday, June 9 and Tuesday, June 13.

Accordingly, on June 16, 2006, the District Commission issued a Final Memorandum of Decision and Order on Application #4C0608–19B-R, confirming the party status determinations and concluding that "while fencing on the boundary line is not, per se, inconsistent with Finding #20 . . . , the fencing must not eliminate the view of the Buffer for the adjoining rear neighbors(s)." The June 16, 2006 decision determined that "a solid wood fence does not comply with [] Finding [20] because it would substantially block the buffer view." In "an effort to preserve the undisturbed vegetated buffer and the aesthetic value of the Buffer," however, the District Commission approved the installation of a chain-link fence, even though Appellant-Applicants had not requested that alternative, and issued Act 250 "Land Use Permit Amendment" #4C0608–19B-R approving the installation of "a chain-link fence" along the "rearmost edge of the 25-foot undisturbed vegetated buffer area at the rear of the Lot." It is only the June 16, 2006 decision of the District Commission that was appealed to this Court by Appellant-Applicants. No enforcement action has been filed, and, despite the focus on enforcement issues in the Etter affidavit, the installation (or

5

removal) of the stockade fence is not before the Court in this appeal.

Appellant-Applicants ask the Court to interpret the meaning of the term "to provide screening" in Finding 20 of Act 250 Permit #4C0608–19 to mean that the buffer should "shield" or "block" the Woodlands Development at Lang Farm from view of the Countryside residential subdivision. Resolution of this question implicates Questions 3 and 4 of the Statement of Questions.

First, it appears that the District Commission concluded this issue in its June 6, 2006 decision, which was not appealed. In that decision, it determined that the 1994 District Commission, in issuing Act 250 Permit #4C0608–19, had not found the proposed development of the final phase of the Woodlands Development at Lang Farm to cause an undue adverse aesthetic effect that would need to be screened or mitigated by the buffer, but rather that the purpose of the buffer was to protect the aesthetic quality of the existing Countryside residential neighborhood from being substantially degraded by too close a proximity to the new residential development in the final phase of the Woodlands Development at Lang Farm. That is, it determined that the purpose of Finding 20 was to provide a 25-foot-wide undisturbed vegetated buffer strip for the Countryside residents to experience when looking (or listening) toward the adjacent Woodlands Development at Lang Farm, rather than to block or mitigate any visual impact or noise that might be generated by uses at the Woodlands Development at Lang Farm.

In any event, the Court is directed in this <u>de novo</u> appeal to apply the same substantive standards as were applicable in the tribunal appealed from, that is, the District Commission. 10 V.S.A. § 8504(h); V.R.E.C.P. 5(g). In applying these standards, the Court reaches the same result.

Appellant-Applicants argue that the term "to provide screening" in Finding #20 means that the buffer area should "shield" or "block" the neighbors' view of Appellant-

6

Applicants' property. The necessary implication of their argument is that, therefore, a solid six-foot-high fence along the property boundary, which would entirely prevent the neighbors' view of the buffer area from their property, satisfies or at least does not violate Finding 20.

When interpreting Finding 20, the Court does not consider the language "to provide screening" in a vacuum. Rather, it must be considered together with the remainder of Finding 20, and in particular with the use of the term "buffer" in Finding 20. This analysis of Finding 20 is similar to that applied to statutory interpretation; the Court must look to the entirety of the document and attempt to harmonize its constituent parts. Cf. Davis v. Hunt, 167 Vt. 263, 267 (1997) (citing Lemieux v. Tri-State Lotto Comm'n, 164 Vt. 110, 113, 666 A.2d 1170, 1173 (1995)).

Finding 20 required "a 25-foot undisturbed vegetated buffer" along the rear portions of Appellant-Applicants' lot, among others, "in order to provide screening between the proposed lots and the existing adjacent [Countryside] residential subdivision."

While in the context of a neighboring non-residential or objectionable use, the term "screening" may mean blocking or shielding a project aesthetically or aurally, as discussed in the cases[6] cited by the Appellant-Applicants, here it must be considered in the context of two neighboring residential subdivisions whose back yards adjoin. No objectionable visual, noise or other aesthetic effects are anticipated to be generated by Appellant-Applicants' use of their lot or by the other lots in the Woodlands Development at Lang Farm, which would require vegetative or other screening in the sense of completely blocking it from view from the existing Countryside subdivision. Had the 1994 District Commission intended for the buffer area required in Finding 20 to block the view of the

---

[6] E.g., Re Lawrence White, #1R0391-8-EB, Findings of Fact, Concl. of Law, and Order, p. 33 (Vt. Envtl. Bd., Apr. 16, 1998) (discussing "screening" in context of need to reduce sounds of rock crusher from traveling onto neighbor's property).

project (Appellant-Applicants' property) from the neighboring properties, it could have included express language permitting or requiring landowners to construct barriers such as fences, or to plant vegetation.

Rather, Finding 20 is concerned with preserving some of the then-existing aesthetic sense of distance or separation between the then-existing Countryside subdivision and the new uses to be permitted in the Woodlands Development at Lang Farm. The use of the words "buffer," "undisturbed," and "between" imply the preservation of a degree of spacing or distance between the new project and the neighboring Countryside subdivision's residential properties that could continue to be perceived or experienced from the Countryside subdivision after the new project would have been built. These words do not imply any need to block the view of one subdivision from the other or that it should block sound from traveling from one subdivision to the other.

Moreover, there would have been no need in the 1994 proceedings for the then-participants to have argued or negotiated over the width of the buffer, which was reduced from fifty to twenty-five feet, if Appellant-Applicants could have satisfied the "screening" requirement by building an opaque fence at the boundary. Rather, the purpose of Finding 20 was to provide a 25-foot-wide undisturbed vegetated buffer strip for the Countryside residents to experience when looking (or listening) toward the adjacent Woodlands Development at Lang Farm, rather than to block or mitigate any visual impact or noise that might be generated by uses on that neighboring residential property.

Finally, once an Act 250 permit has been issued, the applicant, neighboring landowners and prospective purchasers of neighboring property and property within the permitted development all may reasonably rely upon the terms of the permit governing future activity on the property. See In re: Eustance Act 250 Jurisdictional Opinion (#2-231), Docket No. 13-1-06 Vtec, slip op. at 12 (Vt. Envtl. Ct., Feb. 16, 2007), appeal to Vermont Supreme Court filed April 16, 2007, not yet docketed. This type of reliance is exactly what

8

Act 250 contemplates with its notice and permitting process. In re Nehemiah Assocs., Inc., 168 Vt. 288, 294 (1998) (discussing importance of finality in permit decisions "because, both at the time the permit issues and subsequently, the parties and other interested persons reasonably rely on the permit conditions in making decisions"). Such reliance in fact occurred here, as evidenced in the Hawes affidavit.

As the parties have not provided the Criterion 8 analysis in the original 1994 permit, and considering the text of Finding 20 in the context of a new residential subdivision being proposed adjacent to an existing one, the "undisturbed vegetated buffer" required at the boundary of the two residential subdivisions was not intended to block or shield Appellant-Applicants' property from view, and therefore cannot be substituted by an opaque fence.

For the foregoing reasons, it is hereby ORDERED and ADJUDGED that Appellant-Applicants' Motion for Summary Judgment is DENIED and that summary judgment is entered in favor of parties Etter, Hawes and Cilley on Questions 3 and 4 of the Statement of Questions. V.R.C.P. 56(c).

A telephone conference has been scheduled (see enclosed notice) to discuss the remaining questions of the Statement of Questions and whether or when any hearing on the merits should be set. Please be prepared to discuss what material facts, if any, are disputed with respect to the remaining questions, what evidence will be presented on those questions, and the parties' unavailable dates for trial in June, August and September.

Done at Berlin, Vermont, this 19th day of April, 2007.

_____
Merideth Wright
Environmental Judge