STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Environmental Division Unit | ENVIRONMENTAL DIVISION<br>Docket No. 5-1-17 Vtec |
| Northern Vermont Rentals, LLC Extension | DECISION ON MOTION |

## Decision on Motion for Summary Judgment

This is an appeal from a Town of Lyndon Development Review Board decision denying Northern Vermont Rentals, LLC's application for a two-year extension of the construction completion date for a conditional use permit to make certain changes to an existing mobile home park. Applicant, represented by L. Brooke Dingledine, Esq., filed a motion for summary judgment on July 31, 2017. The Town of Lyndon, represented by Hanne A. Anderson, Esq., filed opposition to the Applicants motion for summary judgment.

## Legal Standard

We will grant summary judgment to a party "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). In determining whether there is any dispute over a material fact, "we accept as true allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." White v. Quechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 28 (1999) (citation omitted). "Further, the nonmoving party receives the benefit of all reasonable doubts and inferences." Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356 (citation omitted).

## Factual Background

We recite the following facts solely for the purposes of deciding the pending motion for summary judgment.

1.      Mark Bean is the owner of the Riverview Estates Mobile Home Park (the Park) which is located on a 17.6-acre parcel of land on the east side of Route 114, just east of the junction with Lynburke Road and bordered to the east by the Passumpsic River in the Town of Lyndonville, Vermont.

2.      The Park is located in the flood hazard area.

3.      On July 21, 2005, Mr. Bean received a conditional use permit (the 2005 Permit) from the Lyndonville Development Review Board (the DRB) to fill the Park property to raise the ground floor level of every mobile home in the Park out of and above the 100-year flood hazard area. The 2005 Permit also allowed Mr. Bean to increase in the number of homes in the Park from 61 to 63 and to close off the southernmost curb cut onto Route 114.  The DRB required that Mr. Bean fill the park so that each home would be raised to 12 inches above the 100-year flood hazard area and required him to relocate any lots that were in the floodway. In addition, all of the raised homes are required to be tied down and all hazardous materials tanks (oil and propane tanks, etc.) must be anchored to prevent them from floating away.

4.      Mr. Bean contends that filling and raising lots out of the flood hazard area is a complicated and arduous process because each mobile home must be moved off its site, the site work done to raise the property up, and then the home returned to the original footprint. Mr. Bean contends that the project is financially costly and with the State's strict limitation on mobile home park rental increases, these significant costs cannot be recouped through rental increases.

5.      Mr. Bean alleges he was unable to continue the project beyond 60% completion due to the difficulty and expense of the project.

6.      The filling and raising of the Park will improve the safety of Park residents and will protect public safety by securing the homes and hazardous material tanks so they will not float away during a flood event.

7.      Mr. Bean applied for a renewal of the 2005 Permit in 2015 so that he could complete the project.[1] The 2015 application also proposes the addition of four new lots.

---

[1] The renewal application lists Mark Bean and Riverview Estates Mobile Home Park as the property owners, and Mark Bean, Northern Vermont Rentals, LLC, and Riverview Estates Mobile Home Park as the applicants. The relationship between Mr. Bean and Northern Vermont Rentals, LLC is unclear.

8.  On May 7, 2015, the application to renew the 2005 Permit was approved. Pursuant to the Bylaws, all activities authorized by the permit were to be completed within two years of the date of issue, or the zoning permit would become null and void, unless the DRB extends the completion date for good cause shown. 2016 Bylaws § 13.8.

9.  The Town amended the Bylaws effective September 27, 2016.

10. On October 28, 2016, Mr. Bean applied for an extension of the construction completion date, alleging that the arduous nature of the project required more time to fill and raise the remaining 40% of the Park.

11. Mr. Bean was told by the Zoning Administrator that he would not receive an extension of the 2015 Permit because the new ordinance prohibits the filling of any property in the flood hazard area except for the exact footprint of an existing building.

12. Mr. Bean claims that filling just the footprint of a mobile home is impracticable because there is no way to place these homes atop an island of raised fill without filling the lot surrounding the home so it can be driven back onto the site. Moreover, even if it were possible, the raised footprint home would then be surrounded by flood waters during a storm event which would strand residents on their "island" with no way of egress to safety.

13. Mr. Bean went to a hearing before the DRB on December 15, 2016. After the hearing was closed, the Zoning Administrator handed a letter to the members of the DRB which she obtained from VT ANR floodplain specialist Sacha Peeler about one month before the hearing. She was attempting to submit the letter, which Mr. Bean had not seen, to the DRB after the hearing and without providing him a copy.

14. The DRB explained that while no information has been provided as to the location of these new lots, new structures are now prohibited in both the Floodplain (Zone AE) and River Corridor. Town of Lyndon Zoning Bylaws § 11.6(c)(1), effective September 27, 2016 (the 2016 Bylaws). While mobile homes may be replaced on existing lots or relocated to a less hazardous location, new homes are not allowed on lots in flood hazard areas that have not historically contained a home. 2016 Bylaws § 11.6(G).

15. The DRB denied the extension request in a decision issued on December 19, 2016.

**Analysis and Conclusions of Law**

Applicant's Statement of Questions contains one broad question: "whether the application for extension of the construction completion date of the existing, unexpired and valid permit 2015 conditional use permit should be granted."

The Applicant argues that the extension should be granted for good cause pursuant to Bylaws § 13.8. Applicant argues the project is essential to improve the safety of the residents and the public at large, that the rights to the permit vested at the time of issuance under the old ordinance and he has proceeded in good faith to fill and raise the preexisting mobile home park. Applicant also suggests that a procedural defect in the proceeding below biased the DRB against him.

We hear appeals from permit application decisions de novo, sitting in the place of the decision-making body below—in this case, the DRB—and determine whether the application should be approved. V.R.E.C.P. 5(g). The applicant has the burden to prove that the application should be granted. In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 18, 195 Vt. 586.

**Alleged Procedural Defect Below**

Mr. Bean's motion for summary judgment notes that the Zoning Administrator handed a letter to the members of the DRB which she obtained from VT ANR floodplain specialist Sacha Peeler about one month before the hearing, and that the Zoning Administrator was attempting to submit the letter, which Mr. Bean had not seen, to the DRB after the hearing and without providing him a copy. Mr. Bean believes that the actions of the Zoning Administrator were illegal, improper and show bias.

We review appeals from municipals panel decisions de novo, and accordingly, absent due process violations, we do not consider alleged procedural defects in the proceedings below. In re Pelkey Final Plat Major Subd., No. 172-12-12 Vtec, slip op. at 5 (Vt. Super. Ct. Envtl. Div. July 26, 2013) (Durkin, J.) (citing Chioffi v. Winooski Zoning Bd., 151 Vt. 9, 11 (1989) ("A de novo trial 'is one where the case is heard as though no action whatever has been held prior thereto.'") (quoting In re Poole, 136 Vt. 242, 245 (1978)); In re JLD Props. of St. Albans, LLC, 2011 VT 87, ¶¶ 10–13, 190 Vt. 259 (holding that all but the most "structural" procedural errors are cured by subsequent do novo review). That is, in a de novo appeal, we reach our own factual findings,

based upon the evidence presented to the Court; we do not review or evaluate the evidence presented to the DRB, nor the propriety of the DRB's actions based upon the evidence it received. We therefore conclude that because we review municipal appeals de novo, any procedural defects that may have occurred in the proceeding below will be cured in this proceeding.

**Good Cause**

Applicant argues the extension should be granted for good cause because the Park is 60% complete, Applicant has invested considerable sums of money to fill and raise the Park, and the completion of the project will protect the safety of the residents of the Park as well as the public during flooding events. The Town argues that Applicant cannot show good cause for an extension because Applicant failed to diligently pursue the project, referencing Applicant's ten-year delay in filing for a renewal of his 2005 Permit and subsequent inaction after having been granted the renewal.

The bylaws allow for a time extension to be granted for good cause. 2016 Bylaws § 13.8. Because the bylaws do not define good cause we construe the bylaws according to the general principles of statutory construction. See Houston v. Town of Waitsfield, 162 Vt. 476, 479, 648 A.2d 864, 865 (1994). We are bound by the plain language of the bylaws, and we attempt first to give effect to the plain meaning of the bylaws. In re Weeks, 167 Vt. 551, 554 (1998). If the meaning is plain, we go no further. Id. In addition, when interpreting a municipal bylaw, courts must give effect to the intent of the relevant legislative body. See Town of Killington v. State, 172 Vt. 182, 188 (2001). Since "land use regulation is in derogation of the common law," if the plain language of an ordinance is unclear, we generally resolve any ambiguity in favor of the landowner. In re Miserocchi, 170 Vt. 320, 324 (2000). However, we may not interpret an ordinance inconsistently with its enabling statute. Lemieux v. Tri-State Lotto Comm'n, 164 Vt. 110, 116–17 (1995).

Based on the plain language of the bylaws, we find the Town's argument of diligent pursuit unpersuasive. We conclude that the Bylaws means just what it says: that a permit can be granted an extension for good cause, and diligent pursuit of the project is not required. Other permitting regimes include diligent pursuit requirements to approve extensions. For instance, Act 250 requires that the permittee have "made substantial progress toward completion within

the three-year period." 10 V.S.A. § 6091(b). Had the Town intended good cause to mandate diligent pursuit, it could have included that as a requirement within its bylaw.

This still leaves the question of whether Applicant has demonstrated good cause that would justify granting the extension request. The Town does not discuss whether safety qualifies as good cause to grant an extension.

The 2005 Permit included three items: (1) fill; (2) closing a curb cut; and (3) adding two units. The 2015 Permit application appeared to have the same three items, with the addition of four new units. It is not clear if the four units in the 2015 Permit include the two units in the 2005 Permit. It is also unclear if any new units have been added to date, or if the curb cut has been closed. In the present motion, Applicant makes a good cause argument only as to the fill. We therefore do not address the additional units or the curb cut.

Because we resolve ambiguity in the bylaws in favor of the landowner, we interpret good cause broadly to include safety. The completion of the project will serve to protect the safety of the residents of the Park who must be evacuated from the Park during flooding events as well as to protect the public from homes and hazardous tanks breaking loose and floating away during flooding events. Failure to complete the project will negatively impact residents of the Park as well as the public. Residents of the Park and the public should not be adversely impacted for Applicant's failure to complete the project. Accordingly, we conclude that because filling the Park will protect the public and the Park's residents, extending the permit meets the "good cause" standard set out in Bylaws § 13.8.

**Vested Rights**

Vermont follows the minority rule for vested rights, intending to "create a bright line, allowing identification of when rights vested without having to consider the extent to which the landowner has made investments and taken actions in reliance on the permit." In re Taft Corners Assocs., Inc., 171 Vt. 135, 142 (2000). Under the minority rule, "a permit applicant gains a vested right in the governing regulations in existence when a full and complete permit application is filed." Smith v. Winhall., 140 Vt. 178, 180 (1981). Even "an intervening change in regulations will not strip a putative developer of the vested right to a permit that was actually approved under prior regulations." In re Keystone Development Corp., 186 Vt. 523, 524 (2009) (citing In re

6

<u>Preseault</u>, 132 Vt. 471, 473-74, 321 A.2d 65, 66 (1974)). This conclusion ensures "the orderly governance of development and . . . reasonable reliance on the process." <u>In re Taft Corners Assocs., Inc.</u>, 160 Vt. 583, 593 (1993); (citing <u>Levy</u>, 152 Vt. at 143).

The Town argues that an extension of the completion date for Applicant's zoning permit would not be approved under the current flood hazard regulations. Applicant's original permit, the 2005 Permit, was approved on July 21, 2005. Applicant's 2005 Permit was renewed on May 7, 2015. The approval was subject to conditions carried over from the original permit and the scope of the project has not changed since the original application. Even though the Town amended the bylaws in 2016, the intervening change made to the bylaws did not strip Applicant of his vested rights because his permit was approved under prior bylaws. <u>In re Keystone Development Corp.</u>, 186 Vt. 523, 524 (2009) (citing <u>In re Preseault</u>, 132 Vt. 471, 473-74, 321 A.2d 65, 66 (1974)). Applicant has a vested right in the governing bylaws in existence when a full and complete permit application is filed. <u>Smith v. Winhall</u>, 140 Vt. 178, 180 (1981). We conclude that Applicant's rights vested in 2005 when his completed permit application was filed. Because Applicant acquired vested rights under the 2005 regulations, the current permit extension remains vested under the 2005 regulations.

### Conclusion

For the reasons set out above, Applicants' Motion for Summary Judgment is **GRANTED** for the filling activity but **DENIED** to the extent that the application involves adding any additional units or changing any curb cuts.

Please see the enclosed notice of status conference. At this conference, parties should be prepared to address whether this matter is complete or whether additional litigation is requires and warranted on the issue of additional units or curb cuts.

Electronically signed on November 02, 2017 at 11:33 AM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

7