2007 VT 27

**Shirley AHERN, Bonnie Bollman, Mary Booth-Benton, Edward Cooke, Joan Cotter, Susan Jacobs, Howard Lovering, Judith Lovering, et al. v. Joe MACKEY, Jon Harris, Jay Kaplan, John Crowley, Jeb Spaulding and Richard Cate, Trustees of The State Teachers' Retirement System of Vermont**

[925 A.2d 1011]

No. 05-461

¶ 1. April 18, 2007. Plaintiffs are fifteen members of the State Teachers' Retirement System who petitioned the Retirement Board for compensation and other related relief stemming from the purchase of out-of-state service credit when plaintiffs transferred retirement plans in 1981. The Board denied their request, and plaintiffs challenged the decision pursuant to a Vermont Rule of Civil Procedure 75 complaint against the System and its individual trustees in superior court. The court dismissed plaintiffs' tort and civil rights claims, and subsequently entered summary judgment for defendants, ruling that the Board had not abused its discretion or acted unlawfully in denying the request for relief. On appeal, plaintiffs contend the court erred in: (1) dismissing their claims, and (2) ruling that plaintiffs were not entitled to extraordinary relief under Rule 75. We affirm.

¶ 2. This is the second appeal related to this dispute. The material facts are set forth in full in *Jacobs v. State Teachers' Retirement System*, 174 Vt. 404, 816 A.2d 517 (2002), and need only be summarized here. Plaintiffs claim that when they elected to switch from a contributory retirement plan known as Group A to a noncontributory plan known as Group B which became available in 1981, they were unaware that the refund of their Group A contributions would include any funds they elected to expend to purchase service credit for military service or out-of-state teaching experience. In 1990, the Group B plan was dissolved, and members were automatically transferred to Group C, which included the purchase option for out-of-state teaching experience without the refund benefit.

¶ 3. In *Jacobs*, one of the fifteen named plaintiffs herein claimed that, between 1998 and 1999, she became interested in buying service credit for her seven years teaching experience in New York for purposes of taking early retirement, and only then learned that the amount would have been refunded had she elected to make the purchase in 1981. Plaintiff paid approximately $70,000 for the service credit, and thereafter filed a class action suit against the System to recover the money. Plaintiff alleged that the System had breached statutory and fiduciary duties to accurately inform her and those similarly situated of the consequences of switching from Plan A to Plan B. The trial court denied the motion to certify the class, and subsequently entered summary judgment in favor of the System, ruling that it was protected from suit under the sovereign immunity doctrine. *Id.* at 407, 816 A.2d at 520.

¶ 4. We affirmed the judgment on appeal, rejecting plaintiff's assertions that the System was not an arm of the state covered by sovereign immunity, and that sovereign immunity did not apply be-cause the action was based on breach of contract and tort claims covered by the Vermont Tort Claims Act. As to the contract claim, we held that any obligation to provide proper information created by 16 V.S.A. § 1950(b) went to contract formation rather than performance, and was covered by tort rather than contract theory.[1] *Id.* at 414, 816 A.2d at 526. We noted as well that, because state-created contract rights may be entitled to constitutional protection, they must be expressed in "clear and unmistakable language," *id.* at 414-15, 816 A.2d 526 (quotation omitted), and we concluded that there was "no such unmistakable intent here." *Id.* at 415, 816 A.2d at 526. As to plaintiff's tort claim "based on a violation of the statutory mandate alone," *id.*, we held that an implied waiver of sovereign immunity was appropriate only when strictly necessary to provide a remedy, and that plaintiff had "alternative remedies which she did not pursue." *Id.* at 415, 816 A.2d at 527. These included, we observed, an administrative claim before the Board to "correct any benefit mistakes and errors" under 16 V.S.A. § 1948, and an appeal from the Board's ruling under Rule 75.[2] *Id.*

---

[1] To assist members in deciding whether to transfer from Plan A to Plan B, former 16 V.S.A. § 1950(b) required the System to provide a "general written explanation of the election and its consequences."

[2] 16 V.S.A. § 1948 provides:

Should any mistake be made, or should any change or error in the records result in any member or beneficiary receiving from the system more or less than he would have been entitled to receive had the records been correct, the board shall have the

¶ 5. Following our decision, plaintiffs here petitioned the Board under § 1948 for relief from their failure to purchase out-of-state service credit when switching from Plan A to Plan B in 1981. Some of the plaintiffs who had subsequently purchased credit sought a refund. Others requested that the Board award them additional years of service without cost, while still others who did not require additional service asked that the Board compensate them for the value of their unpurchased credit. Following the submission of evidence and a hearing, the Board denied plaintiffs' petition. Plaintiffs then filed this Rule 75 class-action complaint on behalf of themselves and others similarly situated against the System and the individual trustees. The complaint essentially renewed the claims from *Jacobs* that defendants had breached fiduciary and statutory duties under 16 V.S.A. § 1950(b) to provide them with complete and accurate information concerning the refundable nature of purchasing service credit in connection with transferring to Group B. Plaintiffs also purported to state a civil rights claim under 42 U.S.C. § 1983, alleging that defendants' actions had deprived them of a constitutionally protected right to receive a refund of the purchase price.

¶ 6. The trial court granted the System's motion to dismiss the breach of duty claims, observing that they had been "rejected in *Jacobs* and therefor necessarily must be rejected here," and

_____

power, in its discretion, to correct such mistake or such error, and as far as practicable, to adjust the payments in such a manner that the actuarial equivalent of the benefit to which such member or beneficiary was correctly entitled shall be paid.

dismissed the § 1983 claim on the ground that plaintiffs had failed to identify a constitutionally protected property interest. The court subsequently granted the System's motion for summary judgment as to the Rule 75 complaint proper, ruling that plaintiffs had failed to demonstrate the Board's denial of administrative relief constituted an arbitrary or unlawful abuse of discretion. This appeal by plaintiffs followed.

¶ 7. Plaintiffs initially contend the court erred in dismissing their breach of duty claims, citing our reference in *Jacobs* to the availability of a Rule 75 action. It is self-evident, however, that our purpose in referring to Rule 75 was not to revive the very claims that we had moments earlier rejected. Rather, we observed that plaintiff had "alternative remedies" to her statutory breach of duty claim which she could have pursued had she "acted in a timely fashion." *Jacobs*, 174 Vt. at 415, 816 A.2d at 527. As earlier noted, we explained that these included an administrative claim before the Board "to remedy the alleged error caused by [the] inadequate disclosure" under 16 V.S.A. § 1948, followed — if necessary — by "an action under V.R.C.P. 75(a) to review the refusal of the System to provide the relief she sought." As we observed, sovereign immunity does not bar a citizen from "seek[ing] extraordinary relief" in this fashion. *Id.* Thus, it was the "extraordinary relief" available under Rule 75 — with its narrow and exacting standards — to which we explicitly referred in *Jacobs* and to which plaintiffs were here entitled, and nothing more. The trial court correctly dismissed plaintiffs' claims for breach of statutory and fiduciary duties.

¶ 8. Plaintiffs additionally contend the trial court erred in upholding the Board's rejection of their request for administrative relief under § 1948. Our review in this regard is limited. As we have ex-

plained, the relief available under Rule 75 represents "the modern equivalent of extraordinary relief by mandamus or certiorari." *In re Town of Bennington,* 161 Vt. 573, 573-74, 641 A.2d 1331, 1332 (1993) (mem.). The purpose of mandamus is generally to require a public official or body to perform a simple ministerial duty imposed by law, although it may be available to enforce even discretionary duties "[w]here there appears, in some form, an arbitrary abuse of the power vested by law in an administrative officer . . . which amounts to a virtual refusal to act or to perform a duty imposed by law." *Sagar v. Warren Selectboard,* 170 Vt. 167, 171, 744 A.2d 422, 425 (1999) (quotation omitted). The purpose of certiorari is to review judicial or quasi-judicial action of a lower court or tribunal in regard "to substantial questions of law affecting the merits of the case." *Richards v. Town of Norwich,* 169 Vt. 44, 48, 726 A.2d 81, 84 (1999). Under either writ, the standard of review is "necessarily narrow." *In re Town of Bennington,* 161 Vt. at 574, 641 A.2d at 1332. Furthermore, we are "reluctant to substitute our judgment for the experience and expertise" of an administrative agency. *Lemieux v. Tri-State Lotto Comm'n,* 164 Vt. 110, 112, 666 A.2d 1170, 1172 (1995). Therefore, absent a compelling indication of error, "we will defer to the agency's judgment." *Id.* at 112-13, 666 A.2d at 1172.

¶ 9. In denying plaintiffs' request, the Board here explained that it had exercised its discretion to "decline[] to reconsider the actions taken by the System's trustees and staff and by the petitioning members more than twenty years ago." The Board rested its decision on two basic grounds. First, it concluded that "the passage of time makes it impractical if not impossible to reconstruct the circumstances that prompted the petitioning members to transfer from Group A to Group B in 1981, to purchase credits or

not, and to retire sooner or later." While the Board acknowledged that some of the written materials distributed to plaintiffs in 1981 had been located, it noted that there was no record showing — nor any reliable means of recapturing — the information that may have been imparted to plaintiffs at informational meetings or in direct communications between plaintiffs and Board staff more than two decades earlier. Second, the Board was "mindful" that the System's trustees and the Legislature had relied on the pension choices made by plaintiffs and the potential class they represented in developing the actuarial data that informed the trustees' funding recommendations and the Legislature's appropriations for the last twenty years. Those choices were also "a part of the calculus when the Legislature authorized a progression from Group B to Group C in 1990." To revisit those decisions, the Board found, could result in substantial unfunded financial obligations for the System and the Legislature. Accordingly, the Board denied plaintiffs' request for relief under § 1948.

¶ 10. Although plaintiffs vigorously dispute the Board's reasoning, their arguments do not demonstrate that its ruling represents an arbitrary or unlawful abuse of power. Courts and legislatures have long recognized that timely claims and the statutes of repose which enforce them are critical to the proper administration of justice. As we have explained, such provisions "protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, . . . death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise." *Inv. Props., Inc. v. Lyttle,* 169 Vt. 487, 492, 739 A.2d 1222, 1226 (1999). Indeed, we recognized in *Jacobs* that effective administrative relief would have been available to plaintiff here only "if she had

acted in a timely fashion." 174 Vt. at 415, 816 A.2d at 527. Furthermore, the Board owes a fiduciary responsibility not only to plaintiffs, but to the entire retirement system; its obligation is to maintain the fund's integrity for all employees, past, current, and future. See 16 V.S.A. § 1942(r) (Board oversees retirement system and reviews amounts recommended for state contribution "as necessary to achieve and preserve the financial integrity of the funds established"); *Jacobs*, 174 Vt. at 410, 816 A.2d at 522 (noting Board's statutory responsibility to maintain integrity of fund). Thus, the Board was entitled to consider the potential financial consequences of its ruling on the retirement fund as a whole. See *Vincent v. Vt. State Ret. Bd.*, 148 Vt. 531, 536, 536 A.2d 925, 929 (1987) (in ruling on plaintiff's request for additional retirement payments, the Board "must consider many factors, not the least amongst them the financial health of the retirement fund"). In concluding, therefore, that considerations of timeliness, proof, and the fund's financial integrity militated against the granting of administrative relief, the Board acted well within its broad discretion, and we discern no basis to conclude that its ruling was patently arbitrary or contrary to law.

¶ 11. Plaintiffs lastly contend that the court erred in dismissing their claim, pursuant to 42 U.S.C. § 1983, that the Board's action deprived them of a constitutionally protected due process right. To maintain such an action, plaintiffs must show that they were deprived of a liberty or property interest within the protection of the Fourteenth Amendment. *LaFlamme v. Essex Junction Sch. Dist.*, 170 Vt. 475, 480, 750 A.2d 993, 997 (2000). A protected property interest arises where the plaintiff can demonstrate a "'legitimate claim of entitlement'" created by state law, rather than a mere "'unilateral expectation.'" *Brennan v. Town of Colchester*, 169 Vt. 175, 179, 730 A.2d 601, 605 (1999)

(quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Plaintiffs' claim here, as expressed in their complaint, is predicated on the assertion that they were deprived of a "right under 16 V.S.A. § 1950 to receive a refund of the purchase price" for out-of-state teaching credit. In *Jacobs*, however, we held that any obligation created by § 1950(b) involved a duty to "provide proper information" rather than a substantive right to the pension "benefits being sought." 174 Vt. at 414, 816 A.2d at 526, and thus plaintiff failed to provide a "'clear and unmistakable'" basis for the recognition of a constitutionally protected property interest. *Id.* at 415, 816 A.2d at 526 (quoting *Robert T. Foley Co. v. Wash. Suburban Sanitary Comm'n*, 389 A.2d 350, 358 (Md. 1978)). Plaintiffs' have therefore failed to satisfy the "threshold criterion" for the assertion of a civil rights claim under § 1983. *Brennan*, 169 Vt. at 179, 730 A.2d at 605. Accordingly, the trial court's decision to dismiss the claim was correct.

*Affirmed.*