Gero v. Davis, No. S0513-12 CnC (Crawford, J., Nov. 1, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

SUPERIOR COURT                                                 CIVIL DIVISION
Chittenden Unit                                               Docket No. S0513-12 CnC


RICHARD GERO
    Plaintiff


    v.


CARL DAVIS, SUPERINTENDENT
    Defendant


DECISION ON MOTION TO DISMISS


Plaintiff Richard Gero is a prisoner in the custody of the Vermont Department of Corrections (DOC) serving a ten- to twenty-year sentence after pleading to burglary, assault and robbery with a weapon, simple assault, and violations of conditions of release, all stemming from events in early November 2002. Mr. Gero seeks Rule 75 review of the DOC's action terminating him from the cognitive self-change (CSC) program. Mr. Gero's minimum release date is November 4, 2012, but his termination from the CSC program delays his potential release.

Defendant Andrew Pallito[1] moves to dismiss pursuant to V.R.C.P. 12(b)(1), arguing that the Department of Corrections' programming decisions are not reviewable under *Rheaume v. Pallito*, 2011 VT 72, 190 Vt. 245. Mr. Gero opposes the motion, arguing that *Rheaume* does not permit the DOC to eject a person from programming for any reason it chooses (or no reason at all), and that his termination from the CSC program was so arbitrary that it amounts to an extreme abuse of discretion. Defendant maintains that *Rheaume* forecloses review of all programming decisions, regardless of how extreme that abuse might be. Emily Tredeau of the Prisoners' Rights Office (PRO) represents Mr. Gero. Assistant Attorney General David McLean represents Commissioner Pallito.


BACKGROUND


Mr. Gero alleges that, on October 12, 2011, corrections staff informed him that he would not be permitted to continue in the CSC program unless he could prove that he did not put a knife to the victim's throat in the course of the 2002 burglary. In response, Mr. Gero apparently supplied Brattleboro Detective Michael Gorman's November 7, 2002 affidavit of probable cause. In the affidavit, Detective Gorman recited statements made by witnesses who indicated that two masked men entered the apartment next to Mr. Gero's. One victim stated that she was in bed sleeping when someone jumped on top of her, put a knife to her throat, and asked where the money was. Detective Gorman stated that it was his belief, through investigation, that Mr.

---

[1] Mr. Gero's complaint names only Superintendent Carl Davis as the defendant. However, Corrections Commissioner Andrew Pallito has waived service of process and is defending this case. See Waiver of Service (filed May 31, 2012).

Gero's accomplice, Jason Thayer, was the individual who jumped on top of the sleeping victim and put a knife to her throat. Detective Gorman also recounted Mr. Gero's statement that he took Mr. Thayer to the apartment to obtain drugs, that Mr. Thayer rushed and tackled the kids in the apartment as soon as the door opened, and that Mr. Gero left as soon as he figured out what Mr. Thayer was up to.

Mr. Gero alleges that he filed an informal complaint with Superintendent Davis on or about October 13, 2011, but that Mr. Davis refused to respond to the grievance. After a meeting held on or about October 18, 2011, corrections staff determined that Mr. Gero should be terminated from the CSC program. In a "Notice of Suspension/Termination" dated October 24, 2011, corrections staff stated their reason for that action was that the CSC program requires participants to candidly acknowledge and describe their past criminal and violent behaviors, and that Mr. Gero had repeatedly represented himself as a non-contributory bystander during the events of the crime. The corrections staff believed that Mr. Gero had consistently assigned all responsibility for the crime to his accomplice, Jason Thayer. They concluded that Mr. Gero's "consistent misrepresentation of his behaviors during his major crime renders him ineligible for participation in the CSC program."

It is unclear from the complaint whether Mr. Gero formally appealed his termination from the CSC program to the superintendent.[2] He does allege that he met with Superintendent Davis on January 10, 2012, and that at the meeting Mr. Davis told Mr. Gero to bring his case to court. Mr. Gero seeks an order that would permit him to return to the CSC program without having to take responsibility for something he maintains that he did not do.

ANALYSIS

In *Rheaume v. Pallito*, the Supreme Court held that an inmate may seek Rule 75 review to challenge his designation as a "high risk" sex offender, since such review is expressly granted under 13 V.S.A. § 5411b(b). 2011 VT 72, ¶ 4. The Court also held, however, that "particular programming requirements promulgated after that designation becomes final are a matter of DOC discretion and as such are nonreviewable under Rule 75." *Id*. ¶ 11. The Court reasoned that none of the extraordinary writs provided an avenue for a Rule 75 appeal, and specifically rejected the writ of mandamus because "[p]etitioner has no pre-existing right to a change in his programming requirements." *Id*. ¶ 7 (citing *Grout v. Gates*, 97 Vt. 434, 453 (1924)). The Court's mandate was, in pertinent part, to affirm "as to the determination that programming requirements are not reviewable under Rule 75." *Id*. ¶ 11.

*Rheaume* involved a decision about whether the prisoner was required to complete both the CSC program and the Vermont Treatment Program for Sex Abusers. See *id*. ¶¶ 3, 11 (describing the DOC's discretion as the discretion "to determine what mode of treatment best serves individual inmates"). Similarly, the Supreme Court's opinion in *Holcomb v. Pallito*—not cited by either party here—involved a challenge to the DOC's decision to require the prisoner to participate in and complete the CSC program. See No. 2011-316 (Vt. Jan. 26, 2012) (unpublished mem.), available at http://www.vermontjudiciary.org/d-upeo/Microsoft%20

---

[2] Defendant does not argue, however, that Mr. Gero failed to exhaust his administrative remedies.

2

Word%20-%20eo11-316.pdf.  This case, by contrast, involves the DOC's decision to terminate a prisoner from a program.

The court concludes that, while the DOC's discretion to place a prisoner in a particular program cannot be challenged,[3] neither *Rheaume* nor *Holcomb* foreclose a challenge that alleges that the DOC abused its authority in terminating a prisoner from a program.  As the Supreme Court has recently stated, mandamus is available to review discretionary acts for abuse:

> The purpose of mandamus is generally to require a public official or body to perform a simple ministerial duty imposed by law, although it may be available to enforce even discretionary duties "[w]here there appears, in some form, an arbitrary abuse of the power vested by law in an administrative officer . . . which amounts to a virtual refusal to act or to perform a duty imposed by law."

*Ahern v. Mackey*, 2007 VT 27, ¶ 8, 181 Vt. 599 (mem.) (quoting *Sagar v. Warren Selectboard*, 170 Vt. 167, 171 (1999)).  Prisoners have no pre-existing right to any change in their programming requirements, *Rheaume*, 2011 VT 72, ¶ 7, but once they are in a program they do have a right to be free from arbitrary abuses of power that would terminate them from the program.  It would be anomalous to conclude that the Commissioner's statutory authority and discretion with regard to establishing inmate treatment programs—see 28 V.S.A. § 102—is so broad that it insulates from review even an extreme abuse of discretion unrelated to selecting an appropriate program for a particular inmate, such as a decision to terminate an inmate's participation in a program based solely on personal animus.  *Rheaume* and *Holcomb* do not so hold, and the court declines to read them that broadly.[4]  The court expresses no opinion at this time as to the merits of Mr. Gero's claim.

## ORDER

Defendant's motion to dismiss for lack of subject-matter jurisdiction is denied.

Dated at Burlington this ___ day of October 2012.

_____
Geoffrey Crawford
Superior Court Judge

---

[3] The *Rheaume* Court did not elaborate on what sorts of "programs" fall within the DOC's unreviewable discretion.  The Court's decision was focused on established treatment programs with legitimate penological purposes.

[4] Subsequent to the completion of the parties' briefing on the Commissioner's motion to dismiss, the Washington Superior Court came to the opposite conclusion in *Inman v. Pallito*.  There, the court held that *Rheaume* and *Holcomb* are indistinguishable from cases involving decisions to terminate an inmate from a program, and that all DOC decisions about programming are unreviewable.  No. 287-4-12 Wncv (Oct. 10, 2012) (Bent, J.), *appeal docketed* No. 2012-382.  For the reasons above, this court respectfully disagrees and does not find *Inman* to be persuasive.