*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NOS. 2013-170 & 2013-197

JUNE TERM, 2014

| | | |
|---|---|---|
| Timothy Miller | } | APPEALED FROM: |
| | } | |
| v. | } | Superior Court, Franklin Unit, |
| | } | Civil Division |
| Andrew Pallito, Commissioner of the | } | |
| Vermont Department of Corrections | } | DOCKET NO. 79-2-13 Frcv |
| | | |
| Timothy Miller | } | |
| | } | |
| v. | } | |
| | } | |
| Andrew Pallito, Commissioner of the | } | |
| Vermont Department of Corrections, et al | } | DOCKET NO. 295-6-12 Frcv |

Trial Judge: Dennis R. Pearson

In the above-entitled causes, the Clerk will enter:

Petitioner is an inmate supervised by the Department of Corrections (DOC). He filed suit after DOC denied him conditional reentry furlough based on lack of an approved residence. Petitioner argues that DOC failed to comply with its own regulations in ascertaining the suitability of his residence and that the basis for its failure to approve his residence was not supported by sufficient facts. We affirm.

The relevant facts are not disputed. Petitioner is under DOC supervision pursuant to his June 1983 conviction for second-degree murder, which has a controlling sentence of twenty years to life. In 1996, petitioner reached his minimum sentence date, and was eventually released on parole. He was arrested in May 2012 for violating his parole conditions by using or consuming alcohol. In June 2012, his parole was revoked and he was returned to DOC custody under his controlling sentence.

Petitioner is eligible for conditional reentry furlough, and sought to return to his prior home—a mobile trailer located in a mobile home park in Hinesburg. After DOC's initial denial, petitioner filed a complaint under Vermont Rule of Civil Procedure 75 for review of governmental action. The court held a hearing, and concluded that DOC did not follow the procedures in the applicable regulations governing conditional reentry furlough. Therefore, in January 2013, the court entered judgment for petitioner, and ordered DOC to reconsider petitioner for furlough release and apply the relevant DOC directives.[1]

---

[1] The court specifically cited DOC Directives 371.14 and 371.15.

Petitioner filed a second action after DOC again disapproved his residence. Petitioner styled his complaint as one for habeas corpus. The parties agreed to rely solely on the documentary evidence submitted at the hearing. Those documents included DOC Directives 371.14 and 371.15, petitioner's approval form dated February 1, 2013, a case staffing form from January 25, 2013, and case notes from February 1, 2013. Directive 371.14 is entitled "Furlough Residence Approval." The directive indicates that it is to "provide the Department with guidance in the approval of a household residence of a person on furlough. The guiding principles are guidelines to ensure public safety, staff safety, and offer the least restrictive environment for the offender." There is a chart that determines what level of scrutiny staff uses to approve a residence. Low-level offenses use the guiding principles, whereas some felonies and listed offenses require use of the residence approval checklist. The residence approval checklist contains six yes-or-no questions. The form states: "If all of the above are answered NO, then the residence shall be approved and staff will schedule contact visits at/in the home." The form has a further sentence that states "After the staffing, is the residence approved as is or is there a need for a plan?"

The "Residence Approval" form that is part of DOC Directive 371.14 was completed for petitioner and submitted to the court. "No" was checked in answer to questions 1-5 on the residence approval checklist, and "N/A" was written next to question 6. Directly below, the form indicated that the residence was approved. However, in the bottom portion, the sentence regarding staffing was circled, with the result that the residence was denied. The written explanation was that petitioner "cannot return to live in the trailer park as it presents a foreseeable risk of harm to neighbors. The neighbor who reported the drinking resides next door. [Petitioner] can move trailer to reside in another trailer park." A case note from petitioner's DOC file indicates that under Directive 371.4.1.1c, the residence was denied based on information from neighbors, and concern about a direct neighbor who reported petitioner's parole-violating behavior.

The court issued a written order in April 2013. The court concluded that petitioner's motion was not one for habeas corpus because his eligibility for furlough reentry did not make his detention illegal. Therefore, the court construed petitioner's request as one under Rule 75 for review of governmental action. The court granted judgment to the State, concluding that DOC had substantially followed its regulations and that its decision was not arbitrary or capricious. Petitioner appeals.[2]

On appeal, petitioner was initially represented and his counsel filed an appellant's brief. Petitioner then moved to proceed pro se and filed a second appellant's brief. In both briefs, petitioner's main argument is that DOC was obligated to approve his residence because the evaluator answered the listed questions on the residence approval form negatively, and the form indicates that "[i]f all of the above are answered no, then the residence shall be approved and staff will schedule contact visits at/in the home."

---

[2] While this appeal was pending, the State moved to dismiss for mootness because plaintiff had been released on furlough. In a single-Justice entry order, this Court denied the motion, concluding that there were live issues because petitioner's preferred residence had still not been approved. The State has not challenged this ruling in its appellate brief, and we therefore do not address it.

The State argues that DOC has full discretion in deciding matters related to release on furlough and that its decisions are not reviewable.[3] See Rheaume v. Pallito, 2011 VT 72, ¶¶ 10-11, 190 Vt. 245 (holding that promulgation of programming requirements by DOC are not reviewable under Rule 75 because DOC has full discretion in establishing programming requirements and its decisions are not judicial or quasi-judicial). The Defender General's Office has filed an amicus brief in support of petitioner and argues that furlough release decisions are reviewable under Rule 75 in the nature of either mandamus or certiorari.

An appeal under Rule 75 is for review of governmental action where "such review is otherwise available by law." V.R.C.P. 75(a). Rule 75 provides a procedural mechanism to review agency actions that were previously reviewable "in the nature of certiorari, mandamus, or prohibition." Reporter's Notes, V.R.C.P. 75. Therefore, review is available to the extent that it falls under one of these common-law extraordinary writs. See Rheaume, 2011 VT 72, ¶ 5. A writ of mandamus may be used to "require a public official or body to perform a simple ministerial duty imposed by law." Ahern v. Mackey, 2007 VT 27, ¶ 8, 181 Vt. 599 (mem.). Certiorari allows for review of judicial or quasi-judicial acts of a lower court or tribunal in regard to questions of law. Id. In either case, this Court's review is narrow, and "absent a compelling indication of error, we will defer to the agency's judgment." Id. (quotation omitted).

For purposes of this appeal, we assume without deciding that the decision to deny furlough is reviewable. Nonetheless, we conclude that there is no basis for reversal, as petitioner has failed to demonstrate that DOC "clearly and arbitrarily abused its authority." King v. Gorczyk, 2003 VT 34, ¶ 7, 175 Vt. 220.

Petitioner's arguments are focused on DOC's application of the checklist in Directive 371.14. According to petitioner, once DOC answered the questions concerning petitioner's residence in the negative, DOC was required by its own directive to stop the process and give overall approval to his residence. To the contrary, it was within DOC's discretion to continue evaluating the residence even though the questions were answered negatively. Although the form indicates that negative answers will result in approval, it has four separate places that have an entry for approval or denial. The checklist is just the first of these, and indicates that once that approval is obtained, "staff will schedule contact visits at/in the home." It is a reasonable interpretation of the form that approval under one part does not equate to overall approval or preclude consideration of other factors. Therefore, it was not an abuse of DOC's authority to continue evaluating the suitability of petitioner's place of residence.

Further, it was not an abuse of authority for DOC to interpret the directive as allowing considerations beyond merely the checklist. The checklist is one component of Directive 371.14, which also gives guiding principles for residence approval, including considering whether "[a]pproval of residence does not pose a foreseeable risk of harm to neighbors." Further, Directive 371.14 explains that the process for approval consists of several components, including home visits, discussion with household members, using the guiding principles and using the approval checklist. DOC acted within its discretion in considering all of these components rather than solely relying on the checklist. For the same reason, there is no merit to petitioner's argument that DOC erred in considering the guiding principles even though petitioner's offense

---

[3] The State also contends that petitioner has no protected liberty interest in obtaining furlough status. We need not, and do not, reach this question.

places him in a category that requires use of the checklist.[4]  It is a reasonable reading of the directive that higher-level offenders are subject to both a checklist review <u>and</u> consideration of the guiding principles, and therefore DOC did not commit any compelling error in using the guiding principles in petitioner's case.

Petitioner pro se claims that because the risk to neighbors was not mentioned in DOC's first denial, DOC was barred by res judicata from considering it in its second decision.  There was no error.  Res judicata "bars parties from litigating claims or causes of action that were or should have been raised in previous litigation."  <u>Lamb v. Geovjian</u>, 165 Vt. 375, 380 (1996) (quotation omitted).  It can apply to an administrative decision if the agency acts in a judicial capacity and resolves a disputed issue which the parties had an adequate opportunity to litigate.  <u>Id</u>. at 381.  Here, even assuming that DOC was acting in a judicial capacity in evaluating petitioner's eligibility for furlough, the first denial left open the possibility of further review, and in fact the court's first decision ordered such additional review.  See <u>Zingher v. Dep't of Aging & Disabilities</u>, 163 Vt. 566, 571(1995) (holding res judicata not applicable where agency's first decision left open possibility of reviewing matter again).  Therefore, DOC was not barred from considering this factor.

Finally, while petitioner disputes the veracity and sufficiency of the facts underlying DOC's denial of his residence, Rule 75 is limited to examining questions of law.  See <u>Ahern</u>, 2007 VT 27, ¶ 8.  As long as there is no "compelling indication of error," this Court will not "substitute [its own] judgment for the experience and expertise of an administrative agency."  <u>Id</u>. (quotation omitted).  Because DOC complied with its procedures and provided a permissible basis to disapprove petitioner's proposed residence, there are no grounds to disturb the agency's decision.

<u>Affirmed</u>.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

---

[4]  Directive 371.14 states that the residence approval checklist is to be used for any listed crime, and petitioner's underlying offense of murder is included as a listed crime.  13 V.S.A. § 5301(7)(J).

4