NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 59

No. 24-AP-015

| | |
|---|---|
| American Environmental, Inc. | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| Burlington School District | June Term, 2024 |

Helen M. Toor, J.

Darren R. Misenko of Misenko Construction Law, Waterbury Center, and Michael P. Sams and Herling D. Romero (On the Brief) of Kenney & Sams, P.C., Southborough, Massachusetts, for Plaintiff-Appellant.

William F. Ellis and Kevin J. Coyle of McNeil, Leddy & Sheahan, Burlington, for Defendant-Appellee.


PRESENT: Reiber, C.J., Eaton, Carroll and Waples, JJ., and Johnson, J. (Ret.), Specially Assigned


¶ 1. **WAPLES, J.** This case tasks us with determining whether the trial court properly granted summary judgment to defendant Burlington School District after determining that plaintiff American Environmental, Inc.'s claim was moot. Because we elect to take judicial notice of the completion of the demolition work undergirding the bidding process at issue in this case, we dismiss this appeal as moot.

¶ 2. The following facts are derived from the trial court's findings in its order granting summary judgment to the District. Burlington High School was closed in September 2020 after various toxic substances were detected in several of its facilities. Students were temporarily

relocated to a renovated building downtown while the contaminated high school building was demolished, the soil remediated, and a new building constructed in its place. In September 2022, the Burlington School District sent a Request for Qualifications outlining the first phase of the project to fifteen contractors, including plaintiff, and the ultimate winner of the disputed contract, EnviroVantage. Section 559 of Title 16 governs the procedure for soliciting bids for a public project where, as here, the cost is expected to surpass $500,000. The establishment of prequalification requirements is described as such:

> (1) The State Board shall establish, in consultation with the Commissioner of Buildings and General Services and with other knowledgeable sources, general rules for the prequalification of bidders on such a contract. The Department of Buildings and General Services, upon notice by the Secretary, shall provide to school boards undergoing construction projects suggestions and recommendations on bidders qualified to provide construction services.
> (2) At least 60 days prior to the proposed bid opening on any construction contract to be awarded by a school board that exceeds $500,000.00, the school board shall publicly advertise for contractors interested in bidding on the project. The advertisement shall indicate that the school board has established prequalification criteria that a contractor must meet and shall invite any interested contractor to apply to the school board for prequalification. All interested contractors shall submit their qualifications to the school board, which shall determine a list of eligible prospective bidders based on the previously established criteria. At least 30 days prior to the proposed bid opening, the school board shall give written notice of the board's determination to each contractor that submitted qualifications. The school board shall consider all bids submitted by prequalified bidders meeting the deadline.

16 V.S.A. § 559(b).[*] The statute directs that the contract shall be awarded "to the lowest responsible bid conforming to specifications." Id. § 559(c)(2). It also provides that a "board shall have the right to reject any bid found not to be responsible or conforming to specifications or to

_____

[*] The Legislature recently amended 16 V.S.A. § 559(b), increasing the cost threshold of what constitutes a "[h]igh-cost construction contract" from $500,000 to $2,000,000. The language above reflects the version of the statute in effect during the chain of events germane to this appeal.

2

reject all bids." Id. Section 559(e) specifies that "[a]ny contract entered into or purchase made in violation of the provisions of this section shall be void."

¶ 3. The District provided the contractors with eleven prequalification criteria and noted that it "reserve[d] the right to reject any and all submitted Pre-Qualifications, to readvertise, and to waive any and/or all informalities." Five of the fifteen contractors responded, including plaintiff and EnviroVantage. As relevant here, the following was included among the prequalification criteria:

> 1. Experience in successfully completing hazardous materials abatement and demolition projects ranging from buildings 75k - 300k SF in size and projects ranging from $5 to $20 million in cost.
>
> . . .
>
> 9. The contractor has no previous citations for noncompliance with federal or state regulations pertaining to worker protection, removal, transport, or disposal related to PCBs or other hazardous materials.

In order to be prequalified to bid, contractors were required to submit documentation with proof of meeting the above requirements and to provide "five (5) sample project examples from the past three years demonstrating compliance with the qualification criteria." On October 6, 2022, the School Board voted to approve those five contractors as prequalified and entitled to bid on the project. Bidding instructions were issued in early November with the caveat that the District "reserve[d] the right to reject any and all Bids (sic), to waive any and all informalities not involving price, time or changes in the work." Of the five bids submitted, EnviroVantage's was the lowest at $11,439,895 and plaintiff's was the second lowest at $11,711,000. The School Board subsequently awarded the contract to EnviroVantage by a unanimous vote.

¶ 4. Plaintiff submitted a formal bid protest on December 22, claiming that EnviroVantage was not a responsible or qualified bidder and requesting that the contract be awarded to plaintiff. Plaintiff additionally filed a Vermont Rule of Civil Procedure 75 complaint on January 6 and petitioned the trial court for a preliminary injunction. In denying the requested

3

preliminary injunction, the trial court considered the likelihood of plaintiff's success on the merits, determining that the claim may or may not be untimely, or barred by laches or a lack of standing. In balancing the likelihood of harm and interests of the public, the court determined that granting the injunction would cause the District to be liable for additional costs of around $700,000 a month, and that the construction delay would not be in the best interests of the public. In coming to its conclusion, the court succinctly noted, "the interest in enforcing the statutory bidding process is heavily outweighed by the financial impacts of any delay upon the District and taxpayers."

¶ 5.  The parties then each moved for summary judgment, with plaintiff arguing that, had the bidding criteria been adhered to, the contract should have been awarded to it, and the District arguing that the case was moot because the project was substantially complete. Plaintiff did not respond to the District's argument that the case was moot. The trial court ultimately granted summary judgment to the District. In doing so, it relied on the New York case <u>Citineighbors Coalition of Historic Carnegie Hill ex rel. Kazickas v. New York City Landmarks Preservation Commission</u>, 811 N.E.2d 2 (N.Y. 2004). In <u>Citineighbors</u>, the New York Court of Appeals elaborated on the factors relevant to whether a construction project is "substantially complete" for mootness purposes. <u>Id</u>. at 4. These factors included "how far the work has progressed toward completion[,]" the "challenger's failure to seek preliminary injunctive relief or otherwise preserve the status quo[,]" and "whether the work was undertaken without authority or in bad faith." <u>Id</u>. (quotation omitted).

¶ 6.  The trial court applied these factors and determined that construction was substantially completed, that no relief could be granted, and that plaintiff's claim was moot. The court determined that because plaintiff sought a preliminary injunction, that factor weighed in plaintiff's favor. However, the court also determined that the project was "substantially (or possibly wholly) complete[,]" foreclosing on any effective relief which the court could offer plaintiff. It disagreed with plaintiff's assertion that remedies such as contract reassignment or lost-

profit damages were available pursuant to the statute or Rule 75, and further determined that to pronounce the current contract void would be "so costly as to be beyond serious contemplation." (quoting 13C C. Wright et al., Fed. Prac. & Proc. (Wright & Miller) § 3533.3.1 (3d ed. 2024). In other words, because the project was at such an advanced stage, the costs of voiding the contract and reopening bidding would vastly outweigh any potential relief accorded to plaintiff. Thus, after a determination that the case presented no "actual or justiciable controversy[,]" the trial court granted summary judgment to the District. Plaintiff subsequently filed this timely appeal.

¶ 7. On appeal, plaintiff presents several arguments as to why the trial court erred in granting summary judgment to the District on mootness grounds. Plaintiff argues that the trial court erred in determining the case was moot without evidence showing the project was wholly complete. Plaintiff further argues that the trial court erred in finding the project was not undertaken without authority or in bad faith, pointing to the District's alleged lack of authority in awarding the contract and concealment of evidence. Plaintiff also argues that its attempt to preserve the status quo through seeking a preliminary injunction prevents its claim from being rendered moot. Finally, plaintiff argues that its asserted injuries are redressable, and that even if moot, its claim meets the exception for injuries which are capable of repetition yet evade review. Because we dismiss this appeal as moot, we consider plaintiff's argument that this matter survives mootness based on that exception and do not reach plaintiff's additional arguments.

¶ 8. As a preliminary matter, we take judicial notice of the total completion of demolition and remediation work constituting the basis of plaintiff's claim. Vermont Rule of Evidence 201 allows this Court "whether requested or not" to take judicial notice of any adjudicative fact which is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." V.R.E. 201(b)-(c). A court may take judicial notice of mootness and an "event that causes a case to be

5

moot may be proved by extrinsic evidence outside the record." State ex rel. Nelson v. Russo, 729 N.E.2d 1181, 1182. "Judicial notice is premised on the concept that certain facts or propositions exist which a court may accept as true without requiring additional proof from the opposing parties." In re A.M., 2015 VT 109, ¶ 30, 200 Vt. 189, 130 A.3d 211 (quotation omitted). An adjudicative fact is a "proposition[] pertaining to the particular events which give rise to the lawsuit." Reporter's Notes, V.R.E. 201. Here, there is no dispute that the status of the demolition and remediation work "bear on" the merits of this case. See Commonwealth v. Hilaire, 95 N.E.3d 278, 283 n.5 (Mass. App. Ct. 2018) ("The demographic data at issue here are adjudicatory facts because they bear on the identification of the defendant as one of the perpetrators of the home invasion.").

¶ 9.     Additionally, here, completion of the demolition and remediation work is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," V.R.E. 201, namely the "highly visible construction work . . . underway at the site." Citineighbors, 811 N.E.2d at 3. On April 19, 2024, the District issued a press release stating "[d]emolition of the old campus is complete" and that "EnviroVantage has turned 100% of the area over to Whiting-Turner[,]" the building contractor. Burlington School District, BHS/BTC Project Updates (Apr. 19, 2024), https://www.bsdvt.org/2024/04/19/bhs-btc-update-april-19-demolition-complete-value-engineering-saves-3-9m/ [https://perma.cc/7JLK-QS69]. A timelapse video located on the District's website shows not only the completion of the demolition and soil remediation, but also depicts the erection of a steel frame on the site of the old school beginning in late April 2024. Additional photos and videos uploaded after the case was argued depict continued progress in the construction of several buildings that will make up the campus, including the gymnasium, auditorium, and a courtyard. Finally, when questioned at oral argument, counsel for plaintiff stated he was not aware of the status of the demolition work, while counsel for the District noted it was 100% complete.

6

¶ 10. The Appellate Court of Illinois for the Second District similarly took judicial notice of a completed construction project in Harry W. Kuhn, Inc. v. County of Du Page, 561 N.E.2d 458 (Ill. App. Ct. 1990). There, the defendant county appealed a lower court's granting of mandamus to the plaintiff, directing the defendant to issue a permit allowing the plaintiff to operate a temporary cement batching plant for the duration of a construction contract to which the plaintiff was a party. Id. at 459. In reliance on extrinsic evidence in the form of a letter from the county development committee and affidavit of the plaintiff indicating the construction was complete, the court took judicial notice of the project's completion and dismissed the case as moot. Id. at 463-64. The Court of Appeals for the First District of California likewise took judicial notice of a construction project's completion based on various extrinsic documents the defendant city filed verifying completion. Wilson & Wilson v. City Council of Redwood City, 120 Cal. Rptr. 3d 665, 676 (Cal. Ct. App. 2011). The court ultimately dismissed the appeal as moot, noting that while the plaintiff's challenge "may have presented a ripe controversy at its inception, the status of the case changed once the project was substantially complete." Id. at 687. In this case, the documentation and visual certainty provided by the photos and videos that demolition is complete render this fact proper for the taking of judicial notice.

¶ 11. "It is well-settled that this Court has jurisdiction to decide only 'actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction.' " Chase v. State, 2008 VT 107, ¶ 11, 184 Vt. 430, 966 A.2d 139 (quoting In re Constitutionality of House Bill 88, 115 Vt. 524, 529, 64 A.2d 169, 172 (1949)). "In order for this Court to have jurisdiction over an appeal, it must present a live controversy at all stages of the appeal, and the parties must have a 'legally cognizable interest in the outcome.' " Id. (quoting Doria v. Univ. of Vt., 156 Vt. 114, 117, 589 A.2d 317, 319 (1991)). Thus, "[e]ven though there was once an actual controversy, a change in the facts can render an issue or entire case moot." In re Moriarty, 156 Vt. 160, 163, 588 A.2d 1063, 1064 (1991). An issue becomes moot where "the reviewing court can no longer grant

effective relief." Id. (quotation omitted). Here, because the only available relief to plaintiff pursuant to Rule 75 was precluded with the completion of the contract work, this appeal presents no live controversy between the parties, and must be dismissed.

¶ 12. Plaintiff maintains that its appeal survives mootness because avenues for redressability still include injunctive relief and lost-profit damages. Here, because the work underlying the contract is complete, an injunction would provide no actual relief to plaintiff. See Houston v. Town of Waitsfield, 2007 VT 135, ¶ 12, 183 Vt. 543, 944 A.2d 260 (mem.) ("Because the [project] is complete and cannot be undone, this Court can no longer grant the injunctive relief that landowners originally sought and the case is moot."). Plaintiff's reliance on the Massachusetts case Bradford & Bigelow, Inc. v. Commonwealth, 509 N.E.2d 30, 35 (Mass. App. Ct. 1987), is equally unavailing as, unlike Vermont, "[i]t is well established [in Massachusetts] that a bidder on a contract governed by M.G.L. c. 149, §§ 44A-44L has standing to challenge the compliance of the awarding authority with the requirements of those sections." Quincy Ornamental Iron Works, Inc. v. Findlen, 228 N.E.2d 453, 455 (Mass. 1967).

¶ 13. Plaintiff additionally posits that it is entitled to lost-profit damages; however, the Reporter's Notes to Rule 75 confirm that damages are unavailable pursuant to that rule, allowing liberal amendment of "erroneously" filed Rule 75 complaints "to claim any form of ordinary civil relief, such as . . . damages." Reporter's Notes, V.R.C.P. 75. This makes sense when considering that "the relief available under Rule 75 represents the modern equivalent of extraordinary relief by mandamus or certiorari," having the primary purpose of mandating action by public officials or settling questions of law. Ahern v. Mackey, 2007 VT 27, ¶ 8, 181 Vt. 599, 925 A.2d 1011 (mem.) (quotation omitted). Because plaintiff cannot recover money damages pursuant to Rule 75 and injunctive relief would be strictly illusory, this Court "can no longer grant effective relief." See Moriarty, 156 Vt. at 163, 588 A.2d at 1064.

8

¶ 14. Plaintiff also asserts that, should this Court determine its appeal is moot, we should apply the mootness exception for cases which are capable of repetition, yet evade review. In order to meet this exception, the following conditions must be met: "(1) the challenged action must be in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there must be a reasonable expectation that the same complaining party will be subjected to the same action again." In re Blue Cross, 2022 VT 53, ¶ 9, 217 Vt. 285, 288 A.3d 160 (quotation omitted) (brackets omitted). In considering the first factor, we examine whether the complaining party would have the opportunity to effectively challenge the action in the future. Id. ¶ 10. "If a litigant could have taken actions to expedite the appellate process but did not, the matter does not fit within this exception." Id. (quotation omitted). Here, plaintiff waited approximately three months to file its action with the superior court and an additional two weeks before requesting injunctive relief. Further, plaintiff declined to seek an interlocutory appeal of the court's denial of its preliminary injunction, failing to "expedite the appellate process." See id.

¶ 15. In evaluating the second factor, plaintiff "must show that it is more than just 'theoretically possible' that the situation he currently objects to will repeat itself; rather, he must show a 'demonstrated probability' that he will become embroiled again in this same situation." Paige v. State, 2017 VT 54, ¶ 13, 205 Vt. 287, 171 A.3d 1011 (quotations omitted). Here, plaintiff's bare contention that "where other school construction projects are contemplated in Vermont" and "where AEI is licensed to perform such work in Vermont, it intends to continue bidding on such projects" falls well short of the "demonstrated probability" required to show plaintiff will be subject to the same circumstances for the purposes of this exception. While it is "theoretically possible" that plaintiff may encounter this situation again, this assertion, without more, makes it no more or less likely.

¶ 16. This outcome is bolstered by our decision in In re Green Mountain Power Corp., where Green Mountain Power challenged a Department of Public Service ruling regarding a set of

9

complex interrelated transactions known as "lease-backs." 148 Vt. 333, 334, 532 A.2d 582, 583 (1987). Although the Court determined the appeal was moot based on the finalization of the transactions, Green Mountain Power argued the case was capable of repetition because "lease-back" transactions were becoming much more prevalent. Id. at 335, 532 A.2d at 584. The Court disagreed, noting that "[Green Mountain Power] has presented no evidence that it is currently contemplating any projects that would require . . . approval under comparable circumstances" and "merely advanced the hypothetical possibility that it will." Id. at 336, 532 A.2d at 584. Similarly, plaintiff here has made no showing beyond bare and conclusory allegations that its intention to bid on further public projects will necessarily result in a repetition of plaintiff's current circumstances.

¶ 17. Because we take judicial notice of the completion of the demolition and remediation work underlying the contract at issue, and because such completion leaves plaintiff with no effective remedy which this Court can provide, we dismiss the appeal as moot.

Dismissed.

FOR THE COURT:

_____

Associate Justice

10