VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.       24-AP-225



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

FEBRUARY TERM,   2025

James Burke\* v. Nick Deml et al.

}   APPEALED FROM:
}   Superior Court, Orleans Unit,
]   Civil Division
}   CASE NO. 23-CV-01303
Trial Judge: Daniel P. Richardson

In the above-entitled cause, the Clerk will enter:

Plaintiff James Burke appeals from a civil division order granting summary judgment to defendant Nicholas Deml, Commissioner of the Vermont Department of Corrections (DOC), and dismissing the remaining named defendants from the case.  We affirm.

## I.  Background

The record indicates the following.  Plaintiff is an inmate in the custody of the DOC.  He is incarcerated at the Tallahatchie County Correctional Facility (TCCF) in Tutwiler, Mississippi, pursuant to the Interstate Corrections Compact.  See 28 V.S.A. §§ 1601-1610, 1621.

In March 2023, plaintiff filed a pro se complaint against Commissioner Deml, the DOC, and the superintendent of TCCF.  He alleged that defendants unconstitutionally failed to protect him from TCCF employees who infected him with COVID-19.  The pleading also referenced 24 V.S.A. § 304, a statute governing liability for official misfeasance or neglect of a deputy sheriff, as well as common-law causes of action for negligence and intentional infliction of emotional distress (IIED).

The civil division reviewed plaintiff's complaint and issued an order concluding that, although styled as an action under Vermont Rule of Civil Procedure 75, the substance of plaintiff's pleading indicated that he intended to raise broader civil-rights claims.  It noted that this interpretation was reinforced by plaintiff's request for money damages, which are not recoverable under Rule 75.  See Am. Env't, Inc. v. Burlington Sch. Dist., 2024 VT 59, ¶ 13 (explaining that money damages cannot be recovered under Rule 75).  Accordingly, the court designated plaintiff's filing as a general civil complaint.  It also reminded plaintiff of his obligation to serve defendants.

Plaintiff filed a motion for summary judgment in June 2023 and a motion for default judgment in September 2023.  The trial court denied both motions, explaining that the record did

not reflect that any defendant had been served or agreed to waive service. In December 2023, plaintiff filed a waiver of service executed on behalf of Commissioner Deml.

In February 2024, plaintiff again moved for summary judgment. He filed an affidavit in support of his motion in which he asserted, for the first time, that defendants exacerbated the injuries he suffered as a result of his COVID infection by allowing chemical crop-dusting to occur in fields near TCCF.

The Commissioner moved to dismiss plaintiff's complaint in March. Among other things, he argued that plaintiff failed to state a claim against him in his individual capacity and, to the extent plaintiff sought to raise claims against him in his official capacity, they were barred by absolute immunity. The Commissioner also filed a statement of facts in opposition to plaintiff's summary-judgment motion.

The civil division issued an order on the pending motions in July of the same year. At the outset of its analysis, it noted that the DOC and the superintendent of TCCF were also named in plaintiff's complaint and that, in captioning subsequent filings, plaintiff listed "State of Vermont, et al. in their individual & official capacit[ie]s" among the defendants. The court observed that neither the State of Vermont nor TCCF nor any TCCF employee had been served or joined as parties. It therefore dismissed them from the action, leaving the Commissioner as the sole defendant. While the complaint did not specify whether the Commissioner was named in his individual or official capacity, the court accepted plaintiff's representation that he intended to bring both individual- and official-capacity claims.

Because plaintiff and the Commissioner had each submitted materials outside the complaint, the court elected to treat the Commissioner's motion to dismiss as a summary-judgment motion. See V.R.C.P. 12(b) (providing that motion to dismiss for failure to state claim "shall be treated as one for summary judgment and disposed of as provided in Rule 56," if "matters outside the pleading are presented to and not excluded by the court"). Based on the parties' statements of fact and supporting materials, the court concluded that the following was undisputed for summary-judgment purposes. Plaintiff has been housed at TCCF continuously since October 2018. The COVID-19 pandemic began in March 2020. In the summer of 2020, plaintiff contracted COVID. However, the court held that plaintiff failed to support various other factual assertions offered in support of his claims, including his allegations that TCCF employees were the source of his exposure to the virus and that the State and TCCF failed to enforce existing COVID protocols or adopt more robust protocols.

The civil division characterized plaintiff's claims as falling into two categories: common-law negligence claims and private civil-rights claims pursuant to 42 U.S.C. § 1983—a federal statute plaintiff cited in subsequent filings. It then explained that a § 1983 claim could not be brought against the Commissioner in his official capacity, because the federal statute does not create a cause of action for money damages against a state official sued in his official capacity.

The court next held plaintiff could not sustain either species of claim against the Commissioner in his individual capacity because plaintiff did not allege that the Commissioner was personally involved in the circumstances that led to him contracting COVID. Instead, his sole connection to the allegations giving rise to plaintiff's claims was his position as the current head of the DOC. However, the court took judicial notice that the Commissioner did not assume this role until October 2021, over a year after plaintiff contracted COVID. As a result, it explained, there was no support for even an inference of personal involvement on the Commissioner's part.

2

The court concluded that this left only plaintiff's claims of negligence against the Commissioner in his official capacity. It held that any such claims were barred by absolute official immunity, because the Commissioner is a high-ranking executive official and plaintiff's allegations were all predicated on acts within the scope of his office—overseeing and monitoring Vermont inmates housed out of state and ensuring that the protections of the applicable interstate-housing agreement were in place.

Finally, the civil division noted that while the Commissioner was entitled to summary judgment on this basis alone, plaintiff also failed to establish that the Commissioner had a constitutional or common-law duty to prevent him from contracting COVID-19 or that a breach of such duty proximately caused his illness and alleged injuries. As a result, the court held in the alternative that plaintiff could not establish the essential elements of a claim under § 1983 or a common-law negligence action. This appeal followed.

## II. Analysis

Plaintiff's arguments on appeal are at times difficult to parse. He appears to suggest that the State of Vermont should not have been dismissed as a defendant. However, he primarily contends that, for various reasons, the civil division erred in granting summary judgment to the Commissioner. We address each issue in turn.[*]

Plaintiff notes that he "timely named" his claims against the State. To the extent he contends that the trial court therefore erred in dismissing the State from the case, his argument is misdirected. The court dismissed the State as a defendant because, over a year after filing his suit, plaintiff still had not served the State nor moved to join it as a party. See V.R.C.P. 41(b)(1)(ii) (providing that court may dismiss claims against defendants who have not been served within ninety days of filing complaint). Whether the State was named in plaintiff's complaint has no bearing on that analysis, and plaintiff has not identified any other basis on which to disturb the court's decision.

We therefore turn to plaintiff's argument that the civil division erred in granting summary judgment to the Commissioner. We review the trial court's summary-judgment decision without

_____

[*] Before doing so, we take up plaintiff's pending motion for sanctions against counsel for the Commissioner because it includes a request to strike the Commissioner's brief. Plaintiff seeks this sanction, among others, based on his assertion that the brief includes false statements that plaintiff "failed to exh[au]st grievances, etc." Though it is unclear precisely which aspects of the Commissioner's brief plaintiff takes issue with, we note that the representations therein regarding defendant's grievances appear to be appropriately supported by record citations. In any event, a motion for sanctions "shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." V.R.C.P. 11(c)(1)(A); see V.R.A.P. 25(d)(3) ("If after notice and a reasonable opportunity to respond, the Court determines that V.R.C.P. 11(b) has been violated, the Court may, subject to V.R.C.P. 11(c), impose an appropriate sanction on those violating the rule or responsible for the violation."). Plaintiff's motion was filed with this Court on January 23, 2025, and includes a certificate of service indicating that it was served on the Commissioner's attorney on January 13, 2025. Because plaintiff did not demonstrate that he allowed twenty-one days to elapse following service before filing his motion for sanctions and no shorter safe-harbor period was prescribed, the motion is denied.

deference and under the same standard applied below. Rose v. Touchette, 2021 VT 77, ¶ 12, 215 Vt. 555. Thus, "[w]e will affirm summary judgment when the record clearly indicates there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." King v. Gorczyk, 2003 VT 34, ¶ 7, 175 Vt. 220; see V.R.C.P. 56(a). In analyzing the record, we take all of plaintiff's allegations supported by admissible evidence as true and afford him the benefit of all reasonable doubts and inferences. Gorczyk, 2003 VT 34, ¶ 7.

Plaintiff first contends that summary judgment was premature because he "was never afforded any discovery." However, "Rule 56 does not require that summary judgment motion decisions await completion of discovery." Bushey v. Allstate Ins. Co., 164 Vt. 399, 405 (1995). Rather, "[s]ummary judgment is mandated under the plain language of V.R.C.P. 56(c) where, after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an element essential to his case and on which he has the burden of proof at trial." Poplaski v. Lamphere, 152 Vt. 251, 254-55 (1989) (quotation omitted) (emphasis added).

The civil division expressly considered whether there had been an adequate time for discovery before it converted the Commissioner's motion to dismiss into a motion for summary judgment. It observed that the case was filed over a year earlier, and that "[i]t appears from his multiple and repeated motions that plaintiff is neither interested in further discovery, nor looking to develop an additional record of the TCCF's practices and procedures to test the sufficiency of his factual and legal case." The court also reasoned that, by filing his own motions for summary judgment under Rule 56, plaintiff necessarily asserted that he believed he had sufficient evidence to support the factual allegations material to his claims. Plaintiff's argument fails to engage with the court's analysis, and he has not identified any discoverable material which could have supported his position. He has not shown that summary judgment was premature. See, e.g., Al Baraka Bancorp (Chicago), Inc. v. Hilweh, 163 Vt. 148, 155 (1994) (concluding plaintiff had adequate opportunity for discovery prior to summary-judgment decision where record supported trial court's finding that plaintiff failed to go forward with discovery when it had opportunity and plaintiff made no showing that additional discovery could help its position).

Plaintiff also argues that the court overlooked his claims under the Vermont Constitution. It is true that plaintiff's complaint alleged violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments "to both the U.S. and Vermont Consti[tutions]." While the U.S. Constitution includes the cited provisions, there are no such amendments to the Vermont Constitution. See generally Vt. Const. Because plaintiff's complaint did not cite any extant provision of the state Constitution, the court did not err in concluding that plaintiff alleged only violations of his federal constitutional rights under § 1983. See Reporter's Notes, V.R.C.P. 8 (explaining that complaint must include "a statement clear enough to give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests" (quotation omitted)); see also Felder v. Casey, 487 U.S. 131, 139 (1988) (holding that § 1983 "creates a species of liability in favor of persons deprived of their federal civil rights by those wielding state authority").

Insofar as plaintiff argues that the court erred in failing to consider his allegation that crop-dusting chemicals used near TCCF exacerbated his COVID-related injuries, we disagree. Plaintiff's complaint contained no allegations regarding crop-dusting chemicals. See Reporter's Notes, V.R.C.P. 8. Instead, he raised this issue for the first time in connection with one of his summary-judgment motions. As a result, the court was correct in concluding that plaintiff's claims arose solely from his allegation that the Commissioner failed to prevent him from contracting COVID in the first instance.

4

We also see no error in the trial court's conclusion that plaintiff failed to show the type of personal involvement required to support a claim against the Commissioner in his individual capacity. To sustain a § 1983 claim, plaintiff needed to "demonstrate 'personal involvement' of the defendant in the alleged constitutional violations." Colby v. Umbrella, Inc., 2008 VT 20, ¶ 7, 184 Vt. 1. Likewise, to maintain a negligence claim, plaintiff needed to show that the defendant breached a duty owed to plaintiff, causing actual injury. Driscoll v. Wright Cut & Clean, LLC, 2024 VT 49, ¶ 7. The court concluded that there was no support for an inference that the Commissioner was somehow involved in plaintiff contracting COVID in the summer of 2020 because he did not assume his role as head of the DOC until over a year later. Plaintiff has not argued that the court erred in taking judicial notice of this fact, which negates his allegations that the Commissioner authorized the COVID-19 policies in effect before and during the summer of 2020.

Plaintiff does not challenge the court's ruling that the Commissioner was entitled to absolute immunity with respect to the negligence claims plaintiff raised against him in his official capacity. Instead, he contends that the Commissioner is not entitled to qualified immunity. This argument is misdirected. As the trial court explained, "[t]wo degrees of official immunity have been recognized in this state: absolute immunity for judges, legislators and the state's highest executive officers in cases where the acts complained of were performed within their respective authorities, and qualified immunity for lower-level officers, employees, and agents," which is analyzed under a separate test. Curran v. Marcille, 152 Vt. 247, 248-49 (1989). The DOC Commissioner is "among the state's highest executive officers" and is therefore entitled to absolute immunity for acts within the scope of his authority. Id. at 249. Plaintiff has identified no ground on which to disturb the court's conclusion that absolute immunity applied.

We note that the trial court did not address two claims plaintiff arguably sought to raise in his complaint and references again in his briefing on appeal: misfeasance of a deputy sheriff under 24 V.S.A. § 304 and IIED. But even assuming these claims were adequately raised and that the court therefore erred in failing to analyze them, such error would not warrant reversal. See Gilwee v. Town of Barre, 138 Vt. 109, 111 (1980) (explaining that error will not result in reversal if the record "indicates any legal ground for justifying the result").

Section 304 provides that "[a]ctions for official misfeasance or neglect of a deputy sheriff, or for cause affecting his or her administration of the office, shall be sustained only against the sheriff; but the sheriff shall not be amenable criminally for the conduct of his or her deputy, other than for fines for neglect of duty." 24 V.S.A. § 304. Plaintiff did not explain, either below or on appeal, how a statute relating to actions against a sheriff could give rise to any claim against the Commissioner. As a result, the Commissioner was entitled to summary judgment on this claim.

Finally, we see no reason why the Commissioner would not be entitled to summary judgment on any IIED claim pursuant the same analysis applied to his negligence claim. See Dulude v. Fletcher Allen Health Care, Inc., 174 Vt. 74, 83 (2002) ("A claim for IIED exists when the defendant's extreme and outrageous conduct, done intentionally or with reckless disregard of the possibility of causing emotional distress, causes the plaintiff to suffer extreme emotional distress."). On a related note, we observe that on appeal, plaintiff refers to a claim of gross negligence rather than a claim of negligence. Even assuming this claim was adequately raised in his complaint, however, it would still require the same showing of personal involvement as an ordinary negligence or IIED claim. See Sutton v. Vt. Reg'l Ctr., 2019 VT 71A, ¶ 56, 212 Vt. 612 ("[T]o establish gross negligence, a plaintiff must show a defendant

5

heedlessly and palpably violated a legal duty owed to plaintiff."). Plaintiff did not allege that the Commissioner engaged in any conduct which might support an IIED or gross-negligence claim against him in his personal capacity, and he has not shown that the court erred in concluding that the Commissioner was absolutely immune with regard to any claim based on the allegations in the complaint filed against him in his official capacity.

We have addressed all arguments discernible in plaintiff's brief that pertain to the primary basis on which the trial court granted summary judgment to the Commissioner. As the court recognized, these conclusions, standing alone, were sufficient to support its ruling. As a result, we do not reach plaintiff's arguments relative to the court's alternative conclusions that he failed to establish duty, breach, and causation.

<u>Affirmed</u>.

BY THE COURT:

<br>

Harold E. Eaton, Jr., Associate Justice

<br>

Karen R. Carroll, Associate Justice

<br>

Nancy J. Waples, Associate Justice

6